# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-1312

MISCHELLE MUSSER and MICHAEL MUSSER,

*Plaintiffs-Appellants*,

v.

GENTIVA HEALTH SERVICES, f/k/a Olsten Health Services,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 01:01CV-0085—**William C. Lee**, *Judge.*

_____

ARGUED SEPTEMBER 15, 2003—DECIDED JANUARY 28, 2004

_____

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Plaintiffs Mischelle and Michael Musser, parents of the deceased Maverick Musser, appeal the district court's grant of summary judgment in favor of the defendant, Gentiva Health Services, in this medical malpractice case. Because the expert medical testimony proffered by the Mussers in response to the motion for summary judgment was properly excluded as a sanction under Federal Rule of Civil Procedure 37(c)(1), and because

under Indiana law a prima facie case in medical malpractice cannot be established without expert medical testimony, we affirm.

## I.  History

Maverick Musser was born prematurely on January 10, 1998, at a gestational age of approximately twenty-two weeks. Maverick's premature birth led to serious health problems. He suffered from a condition known as bronchopulmonary dysplasia, a chronic lung disease commonly associated with premature birth. Tragically, Maverick spent his entire life either hospitalized or under twenty-four hour nursing care at his home. Maverick died on August 18, 1999.

Along with constant nursing attention, Maverick's family relied upon various medical devices to sustain his life. Maverick was dependent on a type of ventilator called a CPAP, which provided "continuous positive airway pressure" to Maverick's lungs. The CPAP machine was connected to Maverick by plastic air hosing attached to a tracheotomy tube, a plastic tube inserted through an opening in the neck that provides a superior airway to the lungs. The tracheotomy tube was secured by velcro ties placed around his neck that prevented "decannulation," the accidental removal of the tube.

In addition, three monitors—a pulse oximeter, an apnea monitor, and a low pressure alarm attached to the CPAP machine—were used to measure Maverick's pulse rate and breathing. The pulse oximeter measured oxygen saturation and heart rate; if the measurements fell below or exceeded set parameters, an alarm audible throughout the first level of the Musser home would sound. The low pressure alarm monitored air pressure in the CPAP circuit; if pressure

outside the parameters occurred or if Maverick decannulated, an alarm audible throughout the house would sound. The apnea monitor measured Maverick's heart rate, respiration rate, and the size and depth of the breaths he took; an alarm audible throughout the house would sound if his vital signs fell below or exceeded the proper parameters.

The present appeal arises out of a medical malpractice action brought under Indiana law against the nursing service, Gentiva, that provided care for Maverick.[1] Maverick's mother, Mischelle Musser, a registered nurse, provided some care to Maverick, but Gentiva provided most of the nursing service. Three Gentiva employees monitored Maverick on alternating twelve-hour shifts: registered nurses Jodi Inskeep and Johanna Marshall, and licensed practical nurse Dawn Kinzer.

On the evening of August 18, 1999, Kinzer began her shift at 6:00 p.m. Deposition testimony favorable to the Mussers establishes that Kinzer appeared to be ill and was taking medication, leading to the inference that she was not as alert as she might have been in monitoring Maverick. Furthermore, Kinzer testified at her deposition that Maverick's physical condition was "good" when she arrived for her shift.

Kinzer did not have the apnea monitor attached to Maverick during her shift. She did not observe any movement from Maverick for more than five minutes before realizing that there was a problem. At approximately 7:35 p.m., Kinzer recognized that Maverick was in distress. Kinzer asserts that the pulse oximeter alerted her to this fact, but

---

[1] The Mussers also unsuccessfully sued the company, Apria Healthcare, that provided them with Maverick's monitoring equipment, but the Mussers have not pursued this case on appeal.

the Mussers stated in their depositions that they did not hear an alarm sound. The pulse oximeter registered zero and showed no pulse. Kinzer assessed Maverick, and recognized that he had decannulated. Kinzer called for help from Mischelle Musser; after calling for help, Kinzer unsuccessfully attempted to reinsert the tracheotomy tube that had fallen out. Mischelle successfully inserted a different emergency tracheotomy tube. Both women performed CPR on Maverick, but Mischelle testified at her deposition that she corrected Kinzer's technique. Mischelle could not immediately find a needle to inject Maverick with epinephrine. Emergency personnel arrived and took Maverick to the hospital, where he was pronounced dead.

The Mussers filed their malpractice complaint against Gentiva in the Northern District of Indiana on February 20, 2001, properly invoking diversity jurisdiction. In due course, as the case was pending, depositions of the witnesses previously disclosed by the Mussers were taken— though none of those witnesses had been identified as experts. During a hearing on April 22, 2002, deadlines were established for the parties to "make their expert disclosures." The deadline for the Mussers was set at June 1, 2002. Despite this deadline, the Mussers did not disclose or identify any witness as an expert nor did they ever exchange or file expert reports.

Gentiva moved for summary judgment on October 15, 2002, arguing that the Mussers could not present any competent evidence on breach of duty. The Mussers, in response on November 19, 2002, presented the deposition testimony of nurses Mischelle Musser, Dawn Kinzer, Jodi Inskeep, Johanna Marshall, and Barbara Cromer (Gentiva's highest ranking employee in the Fort Wayne branch), as well as the deposition testimony of William Smits, M.D. (Maverick's treating doctor), Harvey Bieler, M.D. (a doctor who had treated Maverick during a stay at the hospital), and Kevin Hinton (an Apria Healthcare employee). The

Mussers assert that, in the aggregate, the fact and opinion testimony expressed by these witnesses raises a genuine issue of material fact as to whether Kinzer breached her duty of care through inattention to Maverick prior to his death and incompetence in attempting to revive him.

Countering the Mussers' response, Gentiva sought to strike the expert testimony of those witnesses. Gentiva pointed out that the Mussers had not identified as medical experts any of the witnesses previously deposed. The district court agreed, granted the motion to strike, and upon the Mussers' inability to show breach of duty, entered summary judgment in favor of Gentiva.

## II. Analysis

Federal courts sitting in diversity cases such as this apply the Federal Rules of Civil Procedure in procedural matters and the state substantive law that applies to the cause of action. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Therefore, the first step here is to assess whether, under the Federal Rules of Civil Procedure, the district court properly excluded the expert testimony of witnesses proffered by the Mussers. Only then can we analyze how, under Indiana law, the lack of expert medical testimony affects the Mussers' claims.

### A. The Exclusion of Expert Testimony

For failure to disclose any of their witnesses as experts, the district court sanctioned the Mussers by disallowing any expert testimony to counter the motion for summary judgment. We review a trial court's discovery determinations, including the decision to exclude expert testimony, under an abuse of discretion standard. *Miksis v. Howard*, 106 F.3d 754, 758 (7th Cir. 1997). "A court does not abuse

its discretion unless . . . (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000) (quotations omitted).

Our first inquiry will be to assess the district court's application of Rule 26 regarding expert witnesses. The district court must apply the correct legal standards and not reach an erroneous conclusion of law in forming the basis for the sanction of exclusion. *Salgado v. General Motors Corp.*, 150 F.3d 735, 739 n.4 (7th Cir. 1998) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.") (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). If the district court incorrectly found a violation of the rules by the Mussers, then excluding the evidence would necessarily be an abuse of discretion.

The other three inquiries under the abuse of discretion standard are guided by Federal Rule of Civil Procedure 37(c)(1), the rule relied upon by the district court in excluding the expert testimony. This rule states in pertinent part:

> A party that *without substantial justification* fails to disclose information required by Rule 26(a) . . . is not, *unless such failure is harmless*, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

Fed. R. Civ. P. 37(c)(1) (emphasis added). Thus, the text of Rule 37(c)(1) guides our inquiry into whether the exclusion decision lacked evidence in the record, was based on clearly erroneous factual findings, or was arbitrary. The rule asks whether the sanctioned party had "substantial justification" for the failure to comply with discovery rules and whether the failure to comply is "harmless." Fed. R. Civ. P. 37(c)(1); *see Sherrod*, 223 F.3d at 612. Therefore, we examine the rationale offered by the district court for exercising its discretion to exclude the Mussers' expert testimony and decide—without substituting our own judgment for that of the district court—if there is a reasonable basis for the finding that the Mussers' failure to disclose experts lacked substantial justification and was not harmless to Gentiva.

In reviewing an exclusion sanction, "we shall affirm the judgment of the district court whenever we believe that the district court chose an option that was among those from which we might expect a district court reasonably to choose." *Salgado*, 150 F.3d at 739. Furthermore, "in a case such as this where exclusion necessarily entails dismissal of the case, the sanction must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Sherrod*, 223 F.3d at 612 (quotations omitted). As an appellate court, our review of the record is deferential, but where "no harm" can be found to the non-sanctioned party, we will reverse. *Id.* at 613.

### 1. Expert Disclosure Under Federal Rule of Civil Procedure 26

The Federal Rules of Civil Procedure divide potential witnesses into three categories for the purposes of disclosure. The first group, fact witnesses, must be disclosed by sending to the opposing party the name, address, and phone

number (if known) of each potential witness. Fed. R. Civ. P. 26(a)(1)(A). This includes anyone "likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment," and the disclosure should identify the "subjects of the information." *Id.*

The second and third groups, both consisting of witnesses providing expert testimony, are differentiated by the following rule:

### (2) Disclosure of Expert Testimony

**(A)** In addition to the disclosures required [regarding fact witnesses] (1), a party *shall disclose* to other parties the *identity of any person* who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

**(B)** Except as otherwise stipulated or directed by the court, this disclosure shall, *with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report* prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has

> testified as an expert at trial or by deposition within the preceding four years.
>
> **(C)** These disclosures shall be made at the times and in the sequence directed by the court. . . .

Fed. R. Civ. P. 26(a)(2) (emphasis added). Thus, *all* witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A);[2] only those witnesses "*retained or specially employed*

---

[2] To the extent that this statement contradicts *Richardson v. Consolidated Rail Corp.*, 17 F.3d 213, 218 (7th Cir. 1994) ("A doctor is not an expert if his or her testimony is based on . . . observations during [treatment]; if testimony was not acquired or developed in anticipation of litigation or for trial and if the testimony is based on personal knowledge.") (quotations omitted), we note that *Richardson* was interpreting the pre-1993 Amendment Rule 26. *Richardson* relied on language in a case, *Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993), also decided before the 1993 Amendment. More importantly, the text of the current Rule 26(a)(2)(A) references the Federal Rules of Evidence to determine what must be disclosed as expert testimony. Expert testimony is designated as such by its reliance on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. Occurrence witnesses, including those providing "lay opinions," cannot provide opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Thus, a treating doctor (or similarly situated witness) is providing expert testimony if the testimony consists of opinions based on "scientific, technical, or other specialized knowledge" regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation. *Cf. O'Connor v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994) (noting that treating physicians are not exempt from the requirements of Federal Rules of Evidence 702 and 703 because "we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation").

*to provide expert testimony*" must submit an expert report complying with Rule 26(a)(2)(B). The commentary to Rule 26 supports this textual distinction between retained experts and witnesses providing expert testimony because of their involvement in the facts of the case: a "treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." Fed. R. Civ. P. 26, cmt. 1993 Amendments, subdivision (a), para (2). All of these disclosures should be in writing, signed by counsel, and served to opposing counsel. Fed. R. Civ. P. 26(a)(4). Furthermore, each disclosure should be delivered by the deadline for expert disclosures set by the trial judge under Rule 26(a)(2)(C).

The Mussers properly disclosed all of the witnesses they proffered under Rule 26(a)(1)(A). In fact, each of these witnesses was deposed by Gentiva in the regular course of discovery. The district court, however, did not exclude all of the potential testimony of the Mussers' witnesses; it merely found that the witnesses identified by the Mussers should not be permitted to testify as expert witnesses. The district court explained that the error made by the Mussers was in confusing Rules 26(a)(1) and 26(a)(2): "[d]isclosing a person as a witness and disclosing a person as an expert witness are two distinct acts." (Dist. Ct. Op. at 14.) Thus, the witnesses could still testify as fact witnesses, but they could not testify as experts.

The Mussers, however, contend that they did comply with Rule 26(a)(2)(A) because Gentiva was in fact made aware of the identity and records of all of their witnesses, and Gentiva had an opportunity to depose these witnesses as to their opinions. The Mussers assert that it would be a pointless formality to disclose in writing a list of names of persons already known to Gentiva through prior discovery, this time with the designation "expert witness." The Federal Rules of Civil Procedure, however, demand this formal designation, as discussed above. The district court set

a specific date (June 1, 2002) for the disclosure of all of the Mussers' expert witnesses. The Mussers failed to comply with this deadline.

Formal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial. Gentiva should not be made to assume that each witness disclosed by the Mussers could be an expert witness at trial. *Cf. Patel v. Gayes*, 984 F.2d 214, 217-18 (7th Cir. 1993) (affirming, under the pre-1993 Federal Rules of Civil Procedure, the exclusion of expert testimony as to duty of care from treating physicians when they were not disclosed as experts). The failure to disclose experts prejudiced Gentiva because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report. In sum, we agree with the district court that even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony.[3]

---

[3] We need not reach the disputed issue of whether an individual who serves in the capacity of "treating physician" (or any analogous position) may nonetheless be required to submit a report under Rule 26(a)(2)(B). It is clear that there is some expert testimony in the nature of the treating physician's testimony that does not require a report. But some district courts have suggested that if the Rule 26(a)(2)(A) testimony exceeds the scope of treatment and ventures into more general expert opinion testimony, a report may be necessary. *See, e.g.*, *Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F. Supp. 1566, 1573 (N.D. Ill. 1996); *Wreath v. United States*, 161 F.R.D. 448, 449-50 (D. Kan. 1995); *contra McCloughan v. City of Springfield*, 208 F.R.D. 236, 240-42

(continued...)

## 2. The Exclusion of Expert Testimony Under Federal Rule of Civil Procedure 37(c)(1)

The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996). After determining that the Mussers failed to comply with Rule 26(a)(2)(A), the district court appropriately inquired into whether the Mussers had a "substantial justification" for failing to disclose their expert witnesses, and whether the failure was "harmless" to Gentiva. Fed. R. Civ. P. 37(c)(1). After considering these factors, the district court excluded the testimony:

> Disclosing a person as a witness and disclosing a person as an expert witness are two distinct acts. Obviously, opposing counsel will question a witness differently (during a deposition or at trial) if the witness has been designated as an expert, and is also provided the opportunity to challenge the expert's qualifications. In the present case, although Gentiva knew that the nurses and doctors were witnesses, Gentiva was deprived of the opportunity to question them as expert witnesses. Gentiva has clearly suffered a harm. Additionally, the Mussers have shown no justification for their failure to designate expert witnesses, other than their erroneous assumption that disclosing a witness is the same as disclosing an expert witness.

(Dist. Ct. Op. at 14-15.) The issue, then, is whether the sanction of the exclusion of all the Mussers' expert testimony was one "that a reasonable jurist, apprised of all the

---

[3] (...continued)
(C.D. Ill. 2002). In this case, we do not rely on the absence of Rule 26(a)(2)(B) reports from the Mussers' proffered experts in deciding that the Mussers violated Rule 26.

circumstances, would have chosen as proportionate to the infraction." *Sherrod*, 223 F.3d at 612; *Salgado*, 150 F.3d at 740.

The district court did not abuse its discretion in finding that the Mussers lacked substantial justification. A misunderstanding of the law does not equate to a substantial justification for failing to comply with the disclosure deadline. In *Sherrod*, we reversed the district court's exclusion of medical expert testimony, even though the final reports were not filed by the deadline set by the court. 223 F.3d at 612-13. There, however, the experts had been designated as such, preliminary reports had been filed, and both sides had delayed discovery such that late final reports were justified. *Id.* at 613. This is not a case where the disclosure was late by a trivial amount of time. In fact, the Mussers never attempted to disclose any witnesses as experts until the defendants moved for summary judgment. Moreover, that the defendant could have obtained the undisclosed information through its own efforts does not provide substantial justification. *See Doe v. Johnson*, 52 F.3d 1448, 1464 (7th Cir. 1995) (affirming the district court's exclusion of portions of an expert's opinion testimony formed after that expert's deposition because it was not disclosed before trial, despite the appellant's contention that the appellee could have obtained the opinions by asking the proper questions at deposition). Given the necessity for expert testimony in medical malpractice cases under Indiana law, as discussed in detail *infra*, the Mussers should have known that expert testimony was "crucial" to their case, and "likely to be contested;" in these circumstances, there is not a substantial justification for failing to disclose experts. *Dura Automotive Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 616 (7th Cir. 2002) (affirming the exclusion of expert testimony).

The district court did not abuse its discretion in finding harm to Gentiva. It was the district court's opinion that, in

this particular case, Gentiva was denied the opportunity to question the witnesses in their expert capacity. This choice is not outside the range of reasonable options available to the district court. *Salgado*, 150 F.3d at 741-42 (holding that the district court did not abuse its discretion in finding that the incomplete and late submission of expert reports was not harmless).

By the time the district court ruled on the summary judgment motion on January 8, 2003, there was less than three months to the March 24, 2003 trial date. If the trial had proceeded as planned (and there had already been a four-month delay from the original trial date), Gentiva may have had to rely on depositions conducted without the knowledge that each of the witnesses would be used as experts. This is not a case where ample time remained for further discovery. *See Sherrod*, 223 F.3d at 613 (reversing the exclusion of medical testimony because a trial date had not yet been set, it "appeared a long way off," and there was therefore "no harm" or "unfair surprise" in allowing the testimony). Had the Mussers submitted their list of experts on June 1, 2002, Gentiva could have taken new depositions of the Mussers' witnesses, or taken whatever steps it considered necessary to oppose the expert testimony offered by these witnesses in the original depositions. Fed. R. Civ. P. 26(b)(4). It is certainly true that the district court could have rescheduled the date for trial and allowed more time for depositions and new motions for summary judgment. *See, e.g.*, *Kotes v. Super Fresh Food Mkts.*, 157 F.R.D. 18, 21 (E.D. Pa. 1994). But it is not an abuse of discretion to conclude that the additional costs to Gentiva of preparing a new summary judgment motion and further delay in extending the trial date are not harmless. *See CTS Corp.*, 285 F.3d at 616 (concluding that an extension of discovery was harmful because it burdened the defendant unreasonably).

In affirming this judgment, we are mindful of our warning that "[i]n the normal course of events, justice is dispensed by the hearing of cases on their merits." *Salgado*, 150 F.3d at 740 (quoting *Schilling v. Walworth County Park and Planning Comm'n*, 805 F.2d 272, 275 (7th Cir. 1986)). We do not hold that a district court should always exclude evidence in similar factual scenarios; in fact, well-reasoned cases have come to the opposite result. *See Brandon v. Village of Maywood*, 179 F.Supp.2d 847, 860 (N.D. Ill. 2001); *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 138 F.Supp.2d 1088, 1094-95 (N.D. Ill. 2001). We urge district courts to carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative. In the present case, however, we affirm the exclusion of expert testimony as an appropriate exercise of discretion.

## B.  The Requirement of Expert Testimony in Indiana Law

The district court granted Gentiva's motion for summary judgment because, after excluding all of the Mussers' expert medical testimony, there was no genuine issue of material fact on the key issue of breach of duty and Gentiva was therefore entitled to judgment as a matter of law. We review a motion for summary judgment de novo. *Ross v. Town of Austin*, 343 F.3d 915, 917 (7th Cir. 2003). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Mussers brought their complaint as a medical malpractice tort under Indiana law. To show medical malpractice, a plaintiff must establish that the defendant (1) owed a duty to the plaintiff; (2) breached its duty by conduct falling below the standard of care; and (3) proximately caused a compensable injury through the breach of duty. *Whyde v. Czarkowski*, 659 N.E.2d 625, 627 (Ind. Ct. App. 1995). A plaintiff must present expert testimony to establish the applicable standard of care and to show whether the defendant's conduct falls below the standard of care. *Id*; *Narducci v. Tedrow*, 736 N.E.2d 1288, 1292 (Ind. Ct. App. 2000).

Indiana law does recognize a "common knowledge" exception, rooted in the doctrine of res ipsa loquitur, to the rule that expert testimony is necessary in medical malpractice cases. This exception applies when "the complained-of conduct is so obviously substandard that one need not possess medical expertise in order to recognize the breach" of the standard of care. *Malooley v. McIntyre*, 597 N.E.2d 314, 319 (Ind. Ct. App. 1992). The use of this exception has been limited to cases in which obvious mistakes have been made in surgery. *See, e.g.*, *Gold v. Ishak*, 720 N.E.2d 1175, 1183 (Ind. Ct. App. 1999) ("[E]xpert testimony is not required because a fire occurring during surgery where an instrument that emits a spark is used near a source of oxygen is not beyond the realm of the lay person to understand."); *Weinberg v. Geary*, 686 N.E.2d 1298, 1302 (Ind. Ct. App. 1997) (exception has been "narrowly construed" and is "typically [ ] limited to cases involving the failure of an operating physician to remove some surgical implement or other foreign object from the patient's body").

This is not an appropriate case to apply the "common knowledge" exception. Medical expertise is required to understand the appropriate standard of care in observing Maverick for signs of distress, including the use of the electronic monitors. Furthermore, medical expertise is required to understand the appropriate standard of care for reviving Maverick.

Because of the district court's proper exercise of the sanction of exclusion, the Mussers cannot present any expert testimony. Thus, they cannot establish that Gentiva, through their employee Kinzer, breached the applicable standard of care. Since the Mussers cannot establish a necessary element of the claim as a matter of law, summary judgment is appropriate.[4]

## III. Conclusion

For the foregoing reasons, we AFFIRM the grant of summary judgment by the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[4] We note, but do not consider, the district court's alternative analysis disposing of the case on summary judgment even if all of the evidence from the depositions was admitted for consideration.