In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2495

DEBRA JENKINS, Mother, Special
Administrator and Personal
Representative of the Estate
of Larry Jerome Jenkins, ESTATE
OF LARRY JEROME JENKINS,
BRIANA L. JENKINS-BENNING,
Decedent's Minor Child, et al.,

*Plaintiffs-Appellants*,

*v.*

JON BARTLETT,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 C 1136—**David R. Herndon,** *Judge.*

———————

ARGUED DECEMBER 8, 2006—DECIDED APRIL 23, 2007

———————

Before EASTERBROOK, *Chief Judge*, and POSNER and RIPPLE,
*Circuit Judges*.

RIPPLE, *Circuit Judge.* Debra Jenkins, on behalf of the
estate of her son, Larry Jenkins, filed this action under 42
U.S.C. § 1983 against Jon Bartlett, a police officer in the
Milwaukee Police Department ("MPD"). She alleged that

Officer Bartlett had violated Mr. Jenkins' constitutional rights through the use of excessive force when he shot and killed Mr. Jenkins as he attempted to flee custody.[1] Ms. Jenkins also brought § 1983 claims against the City of Milwaukee ("City") and Arthur Jones, the Chief of the MPD at the time Mr. Jenkins was shot, under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). She alleged that the City and Chief Jones were deliberately indifferent to Mr. Jenkins' constitutional rights in the training and supervision of Milwaukee police officers with respect to the use of deadly force on suspects in vehicles ("*Monell* claims"). The district court granted summary judgment in favor of the City and Chief Jones on Ms. Jenkins' *Monell* claims and, following a trial, a jury found that Officer Bartlett had not violated Mr. Jenkins' constitutional rights. Ms. Jenkins appeals the district court's grant of summary judgment in favor of the City and Chief Jones on her *Monell* claims. Ms. Jenkins also appeals two of the district court's evidentiary rulings. For the reasons set forth in this opinion, we affirm the judgment of the district court.

---

[1] Originally, Ms. Jenkins also brought claims on behalf of herself and Mr. Jenkins' children for loss of society and companionship. The district court dismissed the claims brought on behalf of Mr. Jenkins' children, determining that Ms. Jenkins lacked standing to assert their claims. The district court later granted Officer Bartlett's motion to dismiss Ms. Jenkins' personal claim for loss of society and companionship following our decision in *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005), which held that surviving parents had no independent constitutional right to recover for loss of society and companionship of an adult child incidental to state action. *Id*. at 791. Ms. Jenkins does not appeal these rulings.

# I

## BACKGROUND

### A.

On the night of September 19, 2002, Officer Bartlett was on duty with Officer Kurt Lacina. Officers Bartlett and Lacina stopped a black Jeep that they suspected of involvement in drug-related activity. As the officers approached, Mr. Jenkins exited the vehicle. Officer Bartlett searched him for weapons and decided to place him in the squad car while the officer completed his investigation. Before he could be secured in the car, Mr. Jenkins fled on foot and Officer Bartlett, also on foot, pursued him. After a one- to two-minute pursuit, Mr. Jenkins entered an occupied vehicle.

Believing that Mr. Jenkins was attempting to car-jack the vehicle, Officer Bartlett drew his service weapon and approached the vehicle from the front. Mr. Jenkins now was in the driver's seat behind the steering wheel. The vehicle moved toward Officer Bartlett and struck the officer. Accounts differ as to the speed at which the vehicle was traveling and whether the vehicle swerved to strike him. When the vehicle struck Officer Bartlett, he was thrown onto the vehicle's hood. Officer Bartlett then fired nine shots into the vehicle, seven of which struck Mr. Jenkins. Mr. Jenkins died of his wounds.

After the shooting, pursuant to MPD policy, Officer Bartlett was taken to MPD detective bureau headquarters, and an investigation was begun immediately by both the criminal and Internal Affairs divisions of MPD. As was department custom, Bradley DeBraska, the police liaison officer for the City and president of the Milwaukee Police Association, was contacted following the shooting.

DeBraska and an attorney appointed by the police officers' association, Jonathan Cermele, met Officer Bartlett at MPD headquarters. Throughout the evening, DeBraska gathered information and advised Cermele as the attorney prepared to represent Officer Bartlett during his interview with Internal Affairs.

The results of the criminal investigation were sent to the Milwaukee County District Attorney's Office. The district attorney found no basis to file criminal charges against Officer Bartlett. The investigation by Internal Affairs concluded that Officer Bartlett had not violated any MPD policy in the course of the shooting.

**B.**

Ms. Jenkins then brought this action on behalf of Mr. Jenkins' estate. She alleged that Officer Bartlett's use of deadly force was excessive and had violated Mr. Jenkins' Fourth Amendment rights. She also alleged that the City and Chief Jones had exhibited deliberate indifference to Mr. Jenkins' constitutional rights by failing to train properly and to supervise MPD officers with respect to the exercise of deadly force on suspects in vehicles. She based this claim on MPD's alleged failure to train properly its officers according to MPD's own training bulletins for approaching and exercising deadly force on suspects in vehicles. She also pointed to past incidents in which MPD officers had used deadly force on suspects in vehicles.

As the case proceeded, the district court set November 1, 2003 as the deadline for Officer Bartlett, the City and Chief Jones (collectively, "defendants") to provide Ms. Jenkins the disclosures related to expert witnesses required by Rule

26(a)(2) of the Federal Rules of Civil Procedure.[2] On October 1, 2003, Susan Lappen, the attorney for the defendants, sent Ms. Jenkins' attorney a letter that identified the expert witnesses the defendants expected to call, their anticipated testimony and the bases for the opinions to which the experts would testify, including the autopsy protocol the defendants previously had provided to Ms. Jenkins. This letter identified Dr. Jeffrey Jentzen, the Milwaukee County Medical Examiner, and Dr. Mary Mainland, an Assistant Medical Examiner, as potential experts; these physicians had been involved in the autopsy of Mr. Jenkins and in a reconstruction of the shooting. Attached to the letter, Attorney Lappen included each physician's curriculum vitae. Neither physician signed the letter, but both subsequently provided sworn affidavits adopting the contents of the letter.

Ms. Jenkins objected to the proposed testimony of the physicians. She submitted that the defendants' disclosures did not satisfy Rule 26(a)(2)(B)'s requirement for an expert report. The objection did not specify the deficiencies of the disclosure. The district court denied the motion, noting that Ms. Jenkins had not stated the basis for her objection and that the physicians subsequently had adopted Lappen's letter by sworn affidavit that had cured any defect in the report.

The defendants then moved for summary judgment. The district court denied Officer Bartlett's motion for summary judgment based on the defense of qualified immunity: It held that genuine issues existed as to the reason-

---

[2] The deadline originally was set for October 1, 2003, but the district court extended the deadline to November 1, 2003. *See* R.42.

ableness of the use of deadly force. The district court granted summary judgment in favor of the City and Chief Jones: It held that Ms. Jenkins had "failed to articulate any deficiency in the training of MPD officers" or in the inadequacy of investigations of prior incidents in which MPD officers had exercised deadly force on suspects in vehicles. R.99 at 13. After this order, only Officer Bartlett remained as a defendant.

Before trial, the judge originally assigned to the case, Judge Stadtmueller, was replaced by Judge Herndon. After Judge Herndon assumed responsibility for the case, Ms. Jenkins again moved to exclude the testimony of Dr. Mainland, again arguing that Lappen's October 1, 2003 letter did not "comply with the rules for an expert report" and added that Dr. Mainland's opinions were not "rationally based" and had "no relevance other than being highly suggestive." R.125 at 5-6. Judge Herndon denied the motion, noting that Ms. Jenkins had not shown any cause to disturb Judge Stadtmueller's earlier decision. At trial, Ms. Jenkins again attempted to exclude Dr. Mainland's testimony. She contended that the basis for Dr. Mainland's proposed opinion testimony about the position in which Mr. Jenkins was sitting when he was shot did not satisfy the standard of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), for reliability of expert testimony. The district court denied Ms. Jenkins' motion.

Ms. Jenkins also sought to call DeBraska and Cermele as witnesses. Officer Bartlett objected, asserting attorney-client privilege and work product protection. After taking testimony on the matter, the district court ruled that DeBraska's presence during Officer Bartlett's conversations with Cermele did not destroy the attorney-client

privilege because DeBraska was acting as Cermele's agent by assisting Cermele in rendering legal services to Officer Bartlett. Therefore, the district court held, Ms. Jenkins could not call DeBraska or Cermele to testify.

The jury returned a verdict in favor of Officer Bartlett. Ms. Jenkins now appeals.

## II

## DISCUSSION

Ms. Jenkins raises three issues on appeal. First, Ms. Jenkins submits that the district court erred when it allowed Drs. Jentzen and Mainland to testify as expert witnesses because the defendants had failed to provide an expert report that satisfied Federal Rule of Civil Procedure 26(a)(2)(B) and because their testimony did not satisfy the *Daubert* standard for reliability of expert testimony offered under Federal Rule of Evidence 702. Next, she contends that the district court erred when it sustained Officer Bartlett's claim of attorney-client privilege despite DeBraska's presence during conversations between Officer Bartlett and Cermele. Lastly, Ms. Jenkins challenges the district court's grant of summary judgment on her *Monell* claims against the City and Chief Jones. We shall address each of these issues.

### A. Expert Testimony

Ms. Jenkins contends that the district court erred when it permitted Drs. Jentzen and Mainland to testify as experts on behalf of Officer Bartlett. She raises two separate objections to the district court's ruling that permitted the physicians to testify as experts. First, she contends that the

physicians' testimony should have been barred because Officer Bartlett failed to provide an expert report that satisfied Federal Rule of Civil Procedure 26(a)(2)(B). Second, Ms. Jenkins submits that the physicians' testimony should have been excluded under Federal Rule of Evidence 702 because it failed to satisfy the *Daubert* standard for reliability of expert testimony.

### 1. Federal Rule of Civil Procedure 26(a)(2)(B)

Rule 26(a)(2) requires parties to disclose the name of any person the party may call to testify as an expert under Federal Rule of Evidence 702. Fed. R. Civ. P. 26(a)(2)(A). When the potential witness "is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony," the disclosure must also include a "written report prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B). This report must include:

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

*Id.* The purpose of the report is to "set forth the substance of the direct examination." Fed. R. Civ. P. 26 advisory

committee's note. The required disclosures must be made within the time frame directed by the court. Fed. R. Civ. P. 26(a)(2)(C). A party is barred from using at trial evidence that it failed to disclose "without substantial justification" as required by Rule 26(a), unless that failure was harmless. Fed. R. Civ. P. 37(c)(1) & advisory committee's note.

To comply with this rule, the defendants submitted a letter on October 1, 2003 prepared by their attorney. The letter identified Drs. Jentzen and Mainland as expert witnesses, provided each witness' curriculum vitae, and stated the expected testimony and the basis for that testimony, including the autopsy protocol which already had been provided to Ms. Jenkins. Ms. Jenkins received this letter within the time designated by the court. Although the letter was not prepared or signed by either physician, both physicians subsequently submitted affidavits adopting the contents of the letter. The district court held there had been substantial compliance with Rule 26(a)(2).[3] *See* R.74 at 9-10.

---

[3] Ms. Jenkins did not state any basis for her objection to the expert report. *See* R.74 at 9. The district court noted that the absence of the physicians' signatures from the letters left the reports in technical noncompliance with Rule 26(a)(2)(B), but further noted that Ms. Jenkins provided no authority that would support excluding the physicians' testimony in light of the physicians' subsequent affidavits adopting the contents of the letter. *Id.* at 10. Ms. Jenkins renewed this objection after Judge Herndon replaced Judge Stadtmueller, again without stating how the report failed to comply with Rule 26(a)(2)(B). *See* R.125 at 5. Judge Herndon denied this motion, noting that Ms. Jenkins had provided no reason to justify reconsideration of Judge Stadtmueller's order. R.135 at 3-4.

Ms. Jenkins now appeals this ruling. We review a district court's discovery rulings on the exclusion of expert testimony for an abuse of discretion. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755 (7th Cir. 2004). We shall not find an abuse of discretion unless "(1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Id.* (quoting *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000)) (internal quotation marks omitted).

The district court did not abuse its discretion by permitting Drs. Jentzen and Mainland to testify despite any shortcomings in the expert report submitted by the defendants. With the exception of the physicians' signatures, the letter substantially complied with Rule 26(a)(2)(B). The letter stated the opinions to which the physicians would testify and the basis for those opinions, invited Ms. Jenkins' attention to the autopsy protocol which she already had received, disclosed prior testimony by Dr. Jentzen in federal court, and set forth the physicians' qualifications and publications in their respective curriculum vitae. Further, the plaintiffs cured the main defect in the expert report, the absence of the physicians' signatures, by submitting sworn affidavits from the physicians adopting the contents of the October 1, 2003 letter. Under these circumstances, the district court did not abuse its discretion by holding that any shortcoming in the defendants' disclosure was harmless.

### 2. *Daubert* Standard

Ms. Jenkins also contends that Dr. Mainland's testimony should have been excluded under Federal Rule of Evidence 702.[4] Under the *Daubert* gatekeeping requirement, the district court has a duty to ensure that expert testimony offered under Federal Rule of Evidence 702 is both relevant and reliable. *See Kumho Tires Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The goal of *Daubert* is to assure that experts employ the same "intellectual rigor" in their courtroom testimony as would be employed by an expert in the relevant field. *Id.* at 152. Whether proposed expert testimony is sufficiently reliable under Rule 702 is dependent upon the facts and circumstances of the particular case. *See id.* at 150.

The fact-specific nature of the *Daubert* gatekeeping inquiry vests considerable latitude in the trial court, both in determining the method by which the reliability of the proposed expert testimony will be measured and whether the testimony is, in fact, reliable. *Id.* at 152. To ensure that the trial court has fulfilled its gatekeeping responsibility, while still affording it the necessary latitude to meet the circumstances of the case, we employ a two-part inquiry. *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). First, we review de novo the district court's application of the *Daubert* framework, i.e., whether the district court assessed the reliability and relevance of the proffered testimony. *Id.* If the district court properly applied the *Daubert* framework, we then review the district court's ultimate decision to admit or to exclude the testimony for an abuse of discretion. *Id.*

---

[4] Ms. Jenkins does not appear to challenge Dr. Jentzen's testimony under Federal Rule of Evidence 702.

Ms. Jenkins submits that Dr. Mainland's opinion was not reliable because it was based on speculation. Prior to trial, Ms. Jenkins objected to Dr. Mainland's testimony on the ground that it was "not rationally based," "highly suggestive" and likely to confuse the jury; she offered no further explanation. R.125 at 6. At trial, Ms. Jenkins contended that Dr. Mainland's opinion testimony based on Dr. Mainland's reconstruction of the shooting was not reliable because Dr. Mainland had not done a "dimensionally analysis" as part of the reconstruction. R.203 at 3. Ms. Jenkins noted that, by Dr. Mainland's own admission, Dr. Mainland did not know whether Officer Barlett had fired from the ground or from the hood of the vehicle. *See id.* at 4, 6. As a result, Ms. Jenkins submitted, Dr. Mainland's opinion testimony was nothing more than "conjecture and speculation." *Id.* at 6. In response, Officer Bartlett pointed to Dr. Mainland's qualifications, her personal knowledge gained from conducting the autopsy of Mr. Jenkins and her investigation of the vehicle in which Mr. Jenkins was shot. *Id.* at 5. The district court noted that it had applied the *Daubert* analysis when it denied Ms. Jenkins' pre-trial motion and again denied her motion. *Id.* at 6-7.

The record makes clear that the district court directed its inquiry into the reliability of the proffered testimony.[5] As the proponent of Dr. Mainland's testimony, Officer Bartlett provided the court with ample grounds to find Dr. Mainland's testimony reliable. Although, at trial, Ms. Jenkins identified what she believed to be shortcomings in Dr. Mainland's reconstruction of the shooting, she did

---

[5] Ms. Jenkins does not contend that Dr. Mainland's testimony was not relevant.

not explain how these alleged shortcomings would affect the reliability of Dr. Mainland's conclusions. No attempt was made to show that the absence of these analyses caused Dr. Mainland's investigation to fall below the level of intellectual rigor employed by an expert in the field. For example, although Ms. Jenkins seemed to find it significant that Dr. Mainland could not say whether Officer Bartlett had fired from the ground or from the hood of the car, Ms. Jenkins did not explain how such knowledge, or the lack thereof, would affect the reliability of Dr. Mainland's opinion testimony. Ms. Jenkins simply made the unsupported and conclusory statement that lack of this knowledge rendered Dr. Mainland's conclusions "conjecture and speculation." *Id.* at 6. Under these circumstances, we cannot say that the district court abused its discretion in finding that the proposed testimony of Dr. Mainland was sufficiently reliable.

**B.  Attorney-Client Privilege**

Ms. Jenkins next submits that it was error for the district court to sustain Officer Bartlett's claim of attorney-client privilege with respect to his conversations with Cermele made in the presence of DeBraska, a third party. The scope of the attorney-client privilege is a question of law which we review de novo. *See United States v. BDO Seidman*, 337 F.3d 802, 809 (7th Cir. 2003). We review the district court's findings of fact and application of law to fact in connection with a claim to attorney-client privilege for clear error. *See United States v. Frederick*, 182 F.3d 496, 499 (7th Cir. 1999) (application of law to fact); *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (findings of fact).

On the night of the shooting, DeBraska came to the police station to assist Cermele, Officer Bartlett's attorney, as Cermele prepared to represent Officer Bartlett at his interview with Internal Affairs. DeBraska testified that it had been custom since the 1960s for a person in his position to come to the police station after an officer had been involved in a shooting to assist the officer's attorney in providing legal services to the officer by gathering information and assuring that the attorney's representation followed department rules. R.200 at 54, 59. Officer Bartlett's testimony was consistent with DeBraska's account of the events of the evening. He stated that DeBraska had been present during his conversations with Cermele in order to facilitate communications between the two. *Id.* at 30, 46, 50.

The district court held that DeBraska's presence during Officer Bartlett's conversations with Cermele did not destroy the attorney-client privilege. *Id.* at 81. The court recognized that, ordinarily, the presence of a third person would destroy the attorney-client privilege, but noted the exception for the presence of an agent assisting the attorney in rendering legal services. *Id.* at 79-80. Based on the testimony of Officer Bartlett and DeBraska, the court held that DeBraska was present at the police station on the night of the shooting as an adjunct of Officer Bartlett's attorney. *Id.* at 80. The court found that DeBraska was there to assist Cermele by gathering information and by providing "expert advice on the rules and procedures of the department" to facilitate Cermele's representation of Officer Bartlett. *Id.* Under these circumstances, the court found that DeBraska "play[ed] the same role as would a paralegal in a law office, a secretary, or anyone else connected with the office." *Id.*

The attorney-client privilege protects communications made in confidence by a client to his attorney in the attorney's professional capacity for the purpose of obtaining legal advice. *See Evans*, 113 F.3d at 1461. "[B]ecause the privilege is in derogation of the search for the truth, it is construed narrowly." *Id.* Thus, ordinarily, statements made by a client to his attorney in the presence of a third person do not fall within the privilege, even when the client wishes the communication to remain confidential, because the presence of the third person is normally unnecessary for the communication between the client and his attorney. *Id.* at 1462. However, there is an exception to the general rule that the presence of a third party will defeat a claim of privilege when that third party is present to assist the attorney in rendering legal services. 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 183 at 312 (2d ed. 1994).

Ms. Jenkins recognizes this exception, but insists that it is limited to those individuals who would be considered agents of the attorney under the law of master and servant. Nothing in our case law so limits the exception. This exception applies both to agents of the attorney, such as paralegals, investigators, secretaries and members of the office staff responsible for transmitting messages between the attorney and client, and to outside experts engaged "to assist the attorney in providing legal services to the client," such as accountants, interpreters or polygraph examiners. *Id.* at 313. Additionally, this exception reaches retained experts, other than those hired to testify, when the expert assists the attorney by transmitting or interpreting client communications to the attorney or formulating opinions for the lawyer based on the client's communications. *Id.* at 314.

Because there was no legal error in defining the scope of the claimed privilege, our review of the district court's decision sustaining Officer Bartlett's claim of privilege is limited to clear error. We shall reverse only if, on review of the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed" in the application of the law to the facts. *Malachinski v. Comm'r*, 268 F.3d 497, 505 (7th Cir. 2001) (quoting *Coleman v. Comm'r*, 16 F.3d 821, 825 (7th Cir. 1994)) (internal quotation marks omitted). To support his claim of privilege, Officer Bartlett and DeBraska testified regarding DeBraska's activities on the night of the shooting as Officer Bartlett prepared to meet with Internal Affairs. Both testified that DeBraska was there solely to assist Cermele as he prepared to represent Officer Bartlett. Ms. Jenkins offered no evidence to contradict this testimony. The district court chose to credit the testimony of Officer Bartlett and DeBraska. Ms. Jenkins has offered no reason why the court should not have credited this testimony, and there is no other basis in the record to find the court's factual findings clearly erroneous.[6]

---

[6] We note the narrowness of our holding in this regard. We do not suggest that an independent privilege exists for communications between an individual and his union representative. Nor do we imply that the presence of a union official while an individual discusses an ongoing investigation with his attorney never will abrogate a claim of privilege. However, where, as is the case here, the district court finds that a third party is present during conversations between an attorney and a client in preparation for an investigatory interview and the third party is present solely to assist the attorney in rendering legal services to the client, the third party's presence will

(continued...)

## C. *Monell* **Claims**

Ms. Jenkins brought claims against the City and Chief Jones in his official capacity based on Officer Bartlett's alleged violation of Mr. Jenkins' constitutional rights. She alleged that they were deliberately indifferent to the rights of Mr. Jenkins in their failure to train and supervise Officer Bartlett. The district court granted summary judgment in favor of the City and Chief Jones with respect to Ms. Jenkins' claims; it could find no genuine issue of material fact with respect to the question of deliberate indifference.

We review a district court's grant of summary judgment de novo. *Alexander v. City of South Bend*, 433 F.3d 550, 554 (7th Cir. 2006). Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the nonmoving party bears the ultimate burden of proof at trial, the nonmoving party must come forward with specific facts demonstrating an issue for trial to survive summary judgment. *Id.* at 324. Only disputes as to facts which are material, i.e., "facts that might affect the outcome of the suit under the governing law," and genuine, i.e., disputes for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[6] (...continued)
not defeat a claim of privilege. The third party's status as a union representative is immaterial to the question of the attorney-client privilege.

A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability. *See Monell*, 436 U.S. at 694. A municipality only may be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom. *Id.* Although a municipality may be directly liable for constitutional violations by its officers when the municipality evinces a deliberate indifference to the rights of the plaintiff by failing to train adequately its officers to prevent the violation, there can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional rights. *See Alexander*, 433 F.3d at 557 (noting that a municipality may not be held liable under *Monell* for failure to train adequately or to supervise its police officers when the plaintiff fails to demonstrate any constitutional violation by a municipal employee). The jury found that Mr. Jenkins' constitutional rights were not violated when Officer Bartlett fired upon him, thus the City cannot be held liable for any failure to train.

Even if that were not the case, Ms. Jenkins has not raised a genuine issue of material fact with respect to any deficiency in the City's training that could give rise to direct liability for a failure to train adequately its officers. A municipality will be held liable for the violation of an individual's constitutional rights for failure to train adequately its officers only when the inadequacy in training amounts to deliberate indifference to the rights of the individuals with whom the officers come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Proof of deliberate indifference requires more than "[a] showing of simple or even heightened negligence." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997).

We shall find deliberate indifference on the part of
policymakers only when such indifference may be con-
sidered a municipal policy or custom. *City of Canton*, 489
U.S. at 389. This may arise in either of two circumstances.
First, a municipality acts with deliberate indifference
when, "in light of the duties assigned to specific officers or
employees the need for more or different training is so
obvious, and the inadequacy so likely to result in the
violation of constitutional rights," that the deficiency
exhibits deliberate indifference on the part of municipal
policymakers. *Id.* at 390. Alternatively, we may find
deliberate indifference when a repeated pattern of constitu-
tional violations makes "the need for further training . . .
plainly obvious to the city policymakers." *Id.* n.10.

   Ms. Jenkins submits that, in light of several incidents in
which MPD officers exercised deadly force on suspects in
vehicles, the City and Chief Jones were deliberately
indifferent to the rights of Mr. Jenkins when they failed to
provide additional training or to exercise greater super-
vision. As the party on whom the burden of proof rested at
trial, Ms. Jenkins was obligated to come forth with evi-
dence to support this claim in order to survive summary
judgment. Ms. Jenkins identified four incidents between
August 1997 and September 2002, not including the
shooting of Mr. Jenkins, in which Milwaukee police fired
upon a suspect in a vehicle. R.90 at 101-12. Each incident
was investigated by the MPD and no constitutional vio-
lations were found. Ms. Jenkins does not challenge the
adequacy of these investigations. The evidence Ms. Jenkins
presents shows only that four individuals were shot by
MPD officers while in a vehicle; it does not show that each
or any of these shootings amounted to a constitutional

violation.[7] This is not enough to provide the City or Chief

---

[7] The first of the four prior shootings occurred in August 1997. In that incident, an MPD officer approached Victor Rodriguez, who the officer believed to be wanted for multiple armed robberies. When the officer instructed Rodriguez to lie on the ground on his stomach, Rodriguez jumped up, got into his car and closed the door. The officer approached Rodriguez's vehicle from the front to provide cover and to get a better view of Rodriguez. Rodriguez then reached for something on the floor or seat of the vehicle. The officer believed Rodriguez was reaching for a weapon and fired one shot into the vehicle's windshield. Rodriguez was not killed and ultimately was apprehended after fleeing the scene.

The second shooting occurred in July 1998. In that instance, an MPD officer approached a car from the front. As the officer approached, the vehicle began moving toward him. The officer stepped to the side and pointed his revolver into the vehicle. The weapon discharged accidentally and the driver, Antonio Davis, was killed.

The third shooting also occurred in July 1998, on the same day as the Davis incident. The third shooting involved Donnel Sims. There, two MPD officers approached Sims in his car. When the officers noticed open liquor bottles in the car, Sims began backing his vehicle away slowly. One of the officers then reached into the vehicle to shut off the ignition and Sims accelerated, dragging the officer. When Sims stopped the vehicle, the officer was thrown. After the officer was thrown, Sims attempted to flee the scene and the officer who had been dragged fired four shots into the vehicle. Sims was wounded but not killed.

The fourth shooting occurred in June 2002. Two MPD officers identified a vehicle as stolen. The officers pulled their squad car approximately 15 feet behind the vehicle and got out. The

(continued...)

Jones with actual or constructive knowledge that "the police . . . so often violate constitutional rights that the need for further training must have been plainly obvious." *City of Canton*, 489 U.S. at 390 n.10.

For these reasons, Ms. Jenkins has failed to raise a genuine issue of material fact with respect to her claims against the City and Chief Jones, and the district court's grant of summary judgment is affirmed.

## Conclusion

Accordingly, we conclude that the district court did not abuse its discretion when it permitted Dr. Jentzen and Dr. Mainland to testify. Nor did the district court commit clear error by sustaining Officer Bartlett's claim of attorney-client privilege with respect to his conversations with Cermele in DeBraska's presence. Further, because Officer Bartlett did not violate Mr. Jenkins' constitutional rights, there can be no *Monell* liability on the part of the City or Chief Jones. In any event, Ms. Jenkins has failed to raise a genuine issue of material fact with respect to the *Monell*

---

[7] (...continued)
driver of the stolen vehicle, Samuel Rodriguez, then accelerated his vehicle toward the driver's side of the squad car. At that time, the officer driving the squad car was outside of the squad car in between the driver's side door and the squad car's body. As Rodriguez approached, the officer identified himself as an MPD officer and fired one shot into Rodriguez's vehicle. Rodriguez's vehicle then struck the squad car, trapping the officer between the door and the body of the squad car, crushing him. The officer then fired another shot into Rodriguez's vehicle. Rodriguez died of the two gunshots.

liability of the City and Chief Jones for failure to train adequately Officer Bartlett. The decision of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*