NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued January 5, 2009
Decided September 2, 2009

*Before*

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-1650

| | |
|---|---|
| JOHN BLAMEUSER, | Appeal from the United States District |
| *Plaintiff-Appellant.* | Court for the Northern District of Illinois, |
| *v.* | Eastern Division. |
| FREDERICK HASENFANG, | No. 06 CV 1987 |
| *Defendant-Appellee.* | |
| | David H. Coar, |
| | *Judge*. |

## O R D E R

John Blameuser claimed that Chicago police officers used excessive force when arresting him, resulting in severe injuries that required hospitalization. The officers had their own version of events (they claimed he slipped and fell while evading arrest), and the case went to trial. Shortly before trial, Blameuser disclosed that he wanted to present the testimony of Dr. James Prieto, the physician who treated him at the hospital. But the district court granted defendants' motion in limine, which precluded his testimony, finding that it amounted to "expert testimony" on causation and Rule 26(a)(2)(B) required an expert report. Although treating physicians are not required to file expert reports, we conclude that any error committed by the district court was harmless and does not merit reversal. So, we affirm the

district court's judgment.

## I.  BACKGROUND

On the evening of January 24, 2005, officers responded to a citizen's call reporting that his garage was being burglarized.  The responding officers (Officers Regina Reyes and John Lepkowski) saw John Blameuser and another individual attempting to break into the garage. The officers chased the thieves as they attempted to flee.

Officer Frederick Hasenfang, who arrived with other officers to provide backup, saw Blameuser jump out of the truck and chased him into a backyard where Officer Hasenfang eventually arrested him.  During the course of these events, Blameuser was injured.  The officers placed him in an ambulance, which took him, unconscious, to the emergency room at Advocate Christ Hospital.  There, Dr. Prieto treated Blameuser for various injuries.

The cause of Blameuser's injuries was the critical issue at trial.  According to Blameuser, he was beaten, punched, and kicked by the officers until he was unconscious, even though he was not resisting arrest.  The officers' version of the story was that Blameuser, who was heavily intoxicated, slipped and fell while trying to run away from them.  The officers maintained that Blameuser injured himself in the fall.  Blameuser sued the City of Chicago and various officers, claiming that the officers' use of force was excessive and violated his Fourth Amendment rights.

Although discovery was initially set to close on November 30, 2006, the district court granted several motions extending the discovery cut-off.  Shortly before the last cut-off date, July 31, 2007, Blameuser sought to extend discovery so he could depose Dr. Prieto.  This time the court denied the motion, citing the many extensions it already had granted, and finding that there was no excuse for Blameuser's delay.

Three months after the final discovery cut-off date and thirty-two months after Dr. Prieto treated him, Blameuser deposed Dr. Prieto.  During that videotaped deposition, Dr. Prieto testified that although he did not remember treating Blameuser, his chart showed that he gave Blameuser medication for pain and that he had examined Blameuser's spine and noted tenderness.  The chart also indicated that Dr. Prieto had made a "differential diagnosis of assault."  However, when questioned by opposing counsel, Dr. Prieto admitted he did not know the basis for that diagnosis.  He then explained that a "differential diagnosis" is a potential diagnosis consistent with the treater's findings on history and physical examination. Blameuser's counsel asked Dr. Prieto whether Blameuser's injuries were consistent with Blameuser's statement that he was kicked in the face and body.  Dr. Prieto responded the findings "could be" consistent with this statement.

At trial, Blameuser sought to have Dr. Prieto testify as a witness via videotaped deposition, and defendants objected.  In granting defendants' motion in limine, the court ruled

that "any expert testimony by Dr. Prieto concerning causation or his medical diagnosis of 'assault' would not comply with the requirements of Fed. R. Civ. Pro. 26(a) or Fed. R. Evid. 702 and 703."

By the time the case was tried, Blameuser had dismissed his claims against every defendant except Officer Hasenfang. The jury heard the testimony of Officer Hasenfang, Blameuser, the paramedic who took Blameuser to the hospital, and two nurses who treated Blameuser at the hospital. The defense also called Dr. Richard Goldberg, who testified, as an expert, that Blameuser's injuries were not consistent with his allegations that he was beaten by the police.

At trial, Blameuser wanted Dr. Prieto to testify on the issue of causation, but the district court rejected that request and only admitted Dr. Prieto's chart into evidence. The jury returned a verdict in favor of Officer Hasenfang, and Blameuser appeals the district court's ruling excluding Dr. Prieto's testimony.

## II. ANALYSIS

We review the district court's decision to exclude expert testimony for abuse of discretion. *Musser v. Gentiva Health Servs*, 356 F.3d 751, 755 (7th Cir. 2004). Under this standard, we will not reverse the district court's ruling unless "(1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Id.* However, "[e]ven an erroneous evidentiary ruling can be deemed harmless if the record indicates that the same judgment would have been rendered regardless of the error." *Goodman v. Ill. Dept. of Fin. and Prof'l Regulation*, 430 F.3d 432, 439 (7th Cir. 2005).

We begin with Rule 26 of the Federal Rules of Civil Procedure. Rule 26 requires litigants to disclose the identity and contact information of potential fact witnesses, and the identity of "any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(1)(A); 26(a)(2)(A). Additionally, a litigant who intends to introduce expert testimony must provide a written report, prepared and signed by the witness, "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The rule also outlines the information that such a report must contain. Rule 37 provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

Although we have held that in some circumstances, treating physicians must be disclosed as experts pursuant to Rule 26(a)(2)(A), *Musser*, 356 F.3d at 758, we have never held

that treating physicians must file expert reports. According to the Advisory Committee Notes to the 1993 amendments, Rule 26(a)(2)(B), which governs expert reports, applies only to those experts who are "retained or specially employed to provide such testimony in the case," and treating physicians in particular "can be deposed or called to testify at trial without any requirement for a written report." *See also Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007) (expert report not required for treating physician testifying about causation); *Watson v. United States*, 48 F.3d 1100, 1107 (10th Cir. 2007).

The district court precluded Dr. Prieto's "expert testimony" on the ground that he did not file a Rule 26(a)(2)(B) report. Neither the district court nor Officer Hasenfang makes clear why Dr. Prieto's testimony amounts to "expert" testimony. His testimony (which relies almost exclusively on the chart he prepared for Blameuser during his visit to the emergency room) concerns his treatment of Blameuser and his putative diagnosis of assault, which he reached during the course of his treatment. Such testimony does not require an expert report. *See, e.g., Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir.1999) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party."); *cf. United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (noting that treating physician's diagnosis of an injury is lay testimony while a hypothesis about the cause of injury might be expert testimony). And Dr. Prieto was not retained or specially employed to provide testimony in this case.

It is plausible that the district court thought Dr. Prieto went too far with his post-hoc conclusion that Blameuser's injuries "could be" consistent with Blameuser's account of what happened to him. An interesting question is what to do with a treating physician who proposes to testify in the manner of a hired expert, i.e., offering an opinion regarding what might have happened to the patient that does not rely on that physician's personal treatment of the patient. *See, e.g. Musser*, 356 F.3d at 758 n.3 (noting district court disagreement over the application of Rule 2(a)(2)(B) to treating physicians). But we need not delve too far into the limits of Rule 26(a)(2)(A) or (B) because any error by the district court in excluding Dr. Prieto's testimony was harmless in this case. It is plain from Dr. Prieto's deposition testimony that he did not remember anything about Blameuser that was not recorded in his chart. That chart, which contained Dr. Prieto's differential diagnosis of assault, was admitted into evidence, and nurses offered their first hand observations of Blameuser's condition when he arrived at the emergency room. So Blameuser retained any material benefit that he might have derived from Dr. Prieto's testimony. Therefore, we find no reversible error.

### III.  CONCLUSION

The judgment of the district court is AFFIRMED.