In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2264

HEIDI HAPPEL and KENT HAPPEL,

*Plaintiffs-Appellants*,

*v.*

WALMART STORES, INC.,
a Delaware corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 7771—**James B. Moran**, *Judge.*

ARGUED SEPTEMBER 9, 2008—DECIDED APRIL 19, 2010

Before FLAUM, WILLIAMS, and SYKES, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Heidi Happel was diagnosed with Multiple Sclerosis in 1990. After the diagnosis, she did not experience any symptoms of the disease until August 1993, when a Walmart pharmacy negligently filled—and Heidi ingested—a prescription with Toradol, a medication to which Heidi was allergic. Heidi believed that the medication, which triggered a severe reaction, was the impetus for a rapid decline in her health,

so she and her husband, Kent, sued Walmart. After an eight-day trial, a jury awarded the Happels $465,400 in compensatory damages. But the plaintiffs argue here that the trial court made two significant errors that reduced the total damage award. First, they contend that the trial court should have allowed them to present expert witness testimony to demonstrate that the allergic reaction to the prescription drugs exacerbated Heidi's condition. Second, the court should not have used a verdict form that allowed the jury to combine damages for Heidi and Kent rather than providing for separate awards. We agree with the trial court's decision to exclude the testimony of the plaintiffs' experts because the plaintiffs failed to properly disclose one in violation of Federal Rule of Civil Procedure 26 and the other's expertise and methodology did not comply with the *Daubert* standard. As to damages, we reverse and remand for a new trial so that the Happels can seek separate damage awards.

## I. BACKGROUND

Heidi Happel experienced the first symptoms of Multiple Sclerosis ("MS") in 1984. At the time, a teenage Heidi lost some of the vision in her left eye, for which she received treatment from Dr. Peter Bringewald, a neurologist specializing in optic neurology. Heidi continued to develop more MS symptoms over the years. In 1986, she suffered from numbness and fine motor problems, in 1987, tingling in her legs, and in 1990, depression. Although Dr. Bringewald ultimately diagnosed Heidi with MS, between 1990 and 1993 she did not experi-

ence any MS symptoms other than a lingering asthma condition.

On August 4, 1993, Heidi's primary care physician prescribed Toradol, an anti-inflammatory pain reliever, to Heidi for her menstrual cramps.[1] He called the prescription in to the Walmart pharmacy in McHenry County, Illinois, where Heidi usually filled prescriptions for her asthma medication. Heidi was allergic to non-steroidal anti-inflammatory drugs ("NSAIDs"), and it was her practice to notify the pharmacist of this allergy every time she had a prescription filled. On this particular day, however, Heidi was unable to go to the pharmacy, so she asked her husband, Kent Happel, to pick up the Toradol prescription. Before Kent arrived, however, the pharmacist had already been warned about Heidi's allergy to NSAIDs—in the process of inputting the prescription into Walmart's computer system (which warns pharmacists of drug interactions by a flashing screen), the pharmacist had received an electronic alert that Toradol was contraindicated.[2] When

---

[1] The Happels' initial suit also asserted professional negligence claims against Heidi's primary care physician, Dr. Z. Ted Lorenc, for prescribing Toradol. In March 1999, Dr. Lorenc settled out of court with Heidi and Kent for $75,000 each, and he was dismissed from the lawsuit.

[2] The American Medical Association defines "contraindication" as "[a] factor in a person's condition that makes it inadvisable to participate in a particular treatment, such as taking a certain medication or undergoing surgery." AMERICAN

(continued...)

Kent arrived, he also informed the pharmacist of Heidi's allergy.

Despite these warnings, the pharmacist filled Heidi's Toradol prescription. After Heidi ingested the drug, she went into anaphylactic shock. She was rushed to Northern Illinois Medical Center, where she was intubated for 18 hours and placed on a ventilator. Although she was released from the hospital the next day, her health quickly began to deteriorate. She has suffered memory loss, seizures, incontinence, depression, nightmares, difficulty walking, and lack of sexual interest.

The Happels sued Walmart in Illinois state court. After protracted proceedings, the Illinois Supreme Court held that Walmart owed a duty to warn Heidi or her physician when presented with a contraindicated prescription. *See Happel v. Walmart Stores, Inc.*, 766 N.E.2d 1118 (Ill. 2002). Heidi and Kent voluntarily dismissed the lawsuit and re-filed in the Circuit Court of Cook County. Walmart then removed the case to federal court on the basis of diversity jurisdiction. Heidi alleged negligence, battery, and wilful and wanton misconduct, and Kent asserted a loss of society claim. Walmart conceded negligence in filling Heidi's Toradol prescription.

Before trial, the Happels filed initial and amended disclosures pursuant to Federal Rule of Civil Procedure 26. In both disclosures, they listed Dr. Bringewald under

---

[2] (...continued)

MEDICAL ASSOCIATION COMPLETE MEDICAL ENCYCLOPEDIA 404 (Jerrold B. Leikin & Martin S. Lipsky eds., 2003).

subsection (a)(1) as a person with discoverable information, but did not disclose him as an expert or tender his expert report which is required by subsection (a)(2). Less than two months before trial, the Happels attempted to list Dr. Bringewald as an expert witness in their pre-trial order, seeking to elicit testimony that psychological stress from the Toradol incident exacerbated Heidi's MS. Walmart filed a motion in limine to exclude Dr. Bringewald's proffered expert testimony, arguing that he had not been properly disclosed and that his opinion was not reliable under *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993). The district court granted Walmart's motion, stating that "[p]laintiffs' attempt to elevate their treating doctors' status by listing them as experts in the pre-trial motion, without rendering the required expert reports to defendant, fails as an attempt to subvert the requirements of Rule 26(a)(2)(B)."

Walmart also successfully moved to exclude portions of expert testimony from Dr. Alan Hirsch, a board-certified neurologist. The district court found that Dr. Hirsch was "not qualified to testify regarding Ms. Happel's MS, the exacerbation of her MS, or the causation of that exacerbation—anaphylactic reaction. Nor [was] he qualified to testify regarding hypoxia, hypercapnia, hyperventilation, asthma, or lung problems." The court noted that Dr. Hirsch's "experience with MS patients was limited to those coming to him for treatment of smell disorders or mouth pain" and also found little support for his conclusions regarding the connection between stress and the exacerbation of MS.

During trial, the Happels submitted a proposed verdict form that separated Heidi's damages from Kent's damages, which the district court rejected. Instead, the verdict form the court used only contained a single line for compensatory damages to be awarded to the couple. The jury awarded the Happels $465,400 on the negligence claim, but rejected the Happels' other claim for battery.[3] Walmart moved to set off the judgment by $150,000 because the Happels settled with Heidi's primary care physician for this amount before trial. The court granted Walmart's motion, and the Happels do not appeal this order. The Happels filed a post-trial motion for a new trial on damages, which the court denied. And the Happels now appeal that specific ruling.

## II. ANALYSIS

### A. Physicians' Causation Testimony Properly Excluded.

Federal Rule of Evidence 702 governs the admission of expert testimony. It states, in relevant part, that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact . . . a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion . . . ." It also

---

[3] The district court did not instruct the jury on Heidi's claim for wilful and wanton misconduct, so the jury did not consider that claim. The plaintiffs challenged the district court's failure to provide this instruction in their post-trial motion, but have not raised it as an issue on appeal.

requires that: (1) the testimony must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case. *Id*. Rule 702 requires the district court to perform a "gatekeeping" function before admitting expert scientific testimony in order to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Before considering whether the testimony "will assist the trier of fact to understand or determine a fact in issue," a district court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93. The Supreme Court has identified the following factors as pertinent to this inquiry: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the relevant scientific community. *Id.* at 593-94.

The Happels first argue that Dr. Bringewald's experience treating Heidi and other MS patients qualified him as an expert under the *Daubert* test.[4] But the district court excluded Dr. Bringewald as an expert witness because the Happels had not properly disclosed him as an expert

---

[4] Dr. Bringewald is a board-certified neuro-opthalmologist and assistant professor of opthalmology, neurology, and neurosurgery at the University of Texas.

nor rendered the required expert report. "We review de novo whether the district court applied the appropriate legal standard in making its decision to admit or exclude expert testimony, and we review for abuse of discretion the district court's choice of factors to include within that framework and its ultimate conclusions regarding the admissibility of expert testimony." *Winters v. Fru-Con, Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (citation omitted).

Here, we do not reach the question of whether Dr. Bringewald is qualified because of the more glaring problem—the plaintiffs' failure to disclose him as an expert witness during pre-trial discovery. Rule 26(a)(2) of the Federal Rules of Civil Procedure requires the proponent of expert testimony to disclose the witness's identity, along with a written report that contains, among other things, a "complete statement of all opinions the witness will express and the basis and reasons for them."[5] The sanction for failure to comply with this rule is the "automatic and mandatory" exclusion from trial of the omitted evidence, "unless non-disclosure was justified or harmless." *Hammel v. Eau Galle Cheese Factory*,

---

[5]  Rule 26(a)(2)(B) provides in pertinent part:

> Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. . . .

407 F.3d 852, 869 (7th Cir. 2005) (citation omitted). The Happels do not challenge this ruling; they did not even mention it in their opening brief. *See Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir. 2009) (holding that appellant waived arguments that were not developed until the reply brief). So we cannot find that the district court abused its discretion in excluding Dr. Bringewald's opinion testimony.

As to Dr. Hirsch, the Happels argue that his academic credentials and practical experience qualified him as an expert on the effects of stress on MS.[6] However, the district court found that Dr. Hirsch's opinion that psychological and physical stress exacerbated Heidi's MS was unreliable because it lacked a sufficient basis. The district court concluded that Dr. Hirsch's qualifications rendered him capable of testifying about Heidi's "depression, headaches, psychiatric and psychological issues, PTSD, seizures, and schematic brain functions" based on his research and publications relating to those types of issues. But Dr. Hirsch was not qualified to testify about Heidi's MS, the exacerbation of her MS, or other related physical ailments because he had very limited experience with MS patients (most of whom sought his expertise specifically for the treatment of smell disorders or

---

[6] Dr. Hirsch is board-certified in psychiatry (general and specialized areas such as pain management, addiction, and geriatric) and neurology, as well as an assistant professor in the neurology and psychiatry departments at Rush-Presbyterian-St. Luke's Medical Center.

mouth pain) and the opinion was not supported by relevant medical literature.

In addition to his lack of experience in treating patients with MS, Dr. Hirsch offered no experimental, statistical, or other scientific data to support his theory that stress from anaphylactic shock exacerbated Heidi's MS. Some physicians rely on treatises, medical tests, and laboratory findings to reach their causation conclusions, while others conduct a differential diagnosis[7] to rule out the least plausible causes of illness. *See Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1209 (10th Cir. 2002). However, Dr. Hirsch does not cite any of these methodologies in his attempt to demonstrate the causal relationship between stress and MS; rather, he relies solely on his past experience and the temporal proximity of Heidi's allergic reaction and recurring MS symptoms. This does not an expert opinion make. To the extent that Dr. Hirsch does rely on medical literature to support his theory, the articles to which he cites stop short of reaching the same conclusion. Indeed, one of the articles directly contradicts his theory, stating "the association between stressful life experiences and changes in immune function do not establish a causal link between stress, immune function, and disease." *See Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) ("It is axiomatic that causation

---

[7] Differential diagnosis is "the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings." STEDMAN'S MEDICAL DICTIONARY 110620 (27th ed. 2000).

testimony is inadmissible if an expert relies upon studies for publications, the authors of which were themselves unwilling to conclude that causation had been proven."). At best, Dr. Hirsch's testimony would have amounted to an "inspired hunch," and the district court certainly did not abuse its discretion in excluding it. *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996).

## B. Ambiguous Jury Instructions and Verdict Form.

The plaintiffs argue that the district court erred by using a verdict form that failed to separate Heidi's damages from Kent's damages, and that as a result, they were prejudiced and are entitled to a new trial on damages. We agree.

The denial of a motion for a new trial is reviewed for an abuse of discretion, *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008), and we will not set aside a verdict unless a party suffered prejudice from the assigned error, *see* Fed. R. Civ. P. 61. In their complaint, the plaintiffs asserted separate causes of action. Heidi's claims were for negligence, wilful and wanton misconduct, and battery, while Kent's only claim was for loss of society. The district court grouped the negligence and loss of society claims for purposes of the jury instructions and the verdict form. With respect to the negligence claim, the district court instructed the jury as follows:

> On the negligence count, you must fix the amount of money which will reasonably and fairly com-

pensate them for any of the following elements of damages proved by the evidence to have resulted from the negligence of the defendant, taking into consideration the nature, extent and duration of the injury.

- The reasonable expense of necessary medical care, treatment, and services received and the present cash value of the reasonable expenses of medical care, treatment and services reasonably certain to be received in the future;

- The loss of a normal life experienced and reasonably certain to be experienced in the future;

- The pain and suffering experienced and reasonably certain to be experienced in the future;

- The emotional distress experienced and reasonably certain to be experienced in the future;

- The value of salaries and benefits lost;

- The loss of society and companionship experienced by Kent Happel and the loss of society and companionship that is reasonably certain to be deprived of [sic] in the future;

- The value of the loss of services of his wife experienced by Kent Happel.

> Whether any of these elements of damages has been proved by the evidence is for you to determine. . . . If you find that both Plaintiffs are entitled to recover, you will assess the damages of each separately and return a verdict in separate amount for each.

The plaintiffs proposed a verdict form that separated the jury's damage awards as to Heidi and Kent and provided spaces for further itemization of the damages. Rejecting that proposed verdict form, the court used a form that contained only one line for damages: "We, the jury, find for the plaintiffs, Heidi Happel and Kent Happel, on the count of negligence and fix their compensatory damages at $ _____."

In determining whether the verdict form is confusing, we must consider it in light of the instructions given, *see United States v. Hines*, 728 F.2d 421, 427 (10th Cir. 1984), and we construe jury instructions "in their entirety and not in artificial isolation," *United States v. Westmoreland*, 122 F.3d 431, 434 (7th Cir. 1997), reviewing "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues," *Tikalsky v. City of Chicago,* 687 F.2d 175, 181 (7th Cir. 1982) (citation omitted). Considered together, the jury instructions and the verdict form were ambiguous. The district court's instructions to the jury improperly subsumed Kent's loss of society claim within Heidi's negligence claim and did not clearly explain to the jury that the plaintiffs had individually asserted unique claims. Although the loss of society instructions

specifically referred to Kent, they were at the end of a general negligence instruction which never explained which damages were unique to Heidi's claim.

Even if this ambiguity could have been clarified by the court's instruction that the jury return separate verdicts for each plaintiff, it conflicted with the verdict form's single line for a total damage amount. The verdict form gives us no insight as to how the jury allocated the damages among Heidi's and Kent's claims. And contrary to Walmart's assertions that the Happels' marital status makes a division of damages unnecessary for purposes of distributing the jury award, Illinois courts have rejected the argument that settlement amounts should be combined for the purposes of set-off simply because the plaintiffs are a family unit. *See, e.g., Johnson v. Belleville Radiologists, Ltd.,* 581 N.E.2d 750, 757 (Ill. App. 1991) (in case where a husband and wife sued hospital and doctors for medical malpractice and settled with two defendants before trial, trial court properly refused to set off total settlement against nonsettling defendants' judgment because Illinois has not adopted a bright-line rule requiring total set-off when plaintiffs are family unit). Therefore, we conclude that any finding by the jury in which both Heidi and Kent were entitled to damages could be challenged because the jury instructions and verdict form were ambiguous. As a result, it is impossible to determine the proper set-off allocation. And it was error to give the instruction and utilize the verdict form.

Next, we turn to whether the plaintiffs suffered prejudice from the combined award. Before trial, both

Kent and Heidi settled with Heidi's primary care physician for $75,000 *each*, and the district court set off the total of their settlements, $150,000, from the jury's damage award of $465,400. But the set-off amount assumes that the jury awarded more than $75,000 to both Kent and Heidi. If, for instance, the jury believed that Kent was only entitled to $5,000 in damages and allocated the remaining $460,400 to Heidi, then Kent's and Heidi's set-off amounts would have been $5,000 and $75,000 respectively. That would result in a total set-off of $80,000, which is $70,000 less than the amount the district court had calculated. In other words, if either Kent's or Heidi's portion of the damage award is less than $75,000, then the appropriate set-off would be less than the $150,000 set by the district court. And the Happels would have been left with more of the award to take home. Clearly, the Happels were prejudiced by the use of a verdict form that may have resulted in a lower damage award.[8]

---

[8] Although this case presents a unique set of facts, the potential prejudice caused by an ambiguous verdict has warranted a reversal in other contexts. In *CGB Occupational Therapy, Inc. v. RHA Health Services, Inc.*, for example, the verdict form did not allow the jury to differentiate between two contracts that were the subject of a tortious interference claim when the jury awarded punitive damages. 357 F.3d 375, 390 (3d Cir. 2004). The court, on appeal, found that the defendant did not tortiously interfere with one of the contracts, and because the verdict form did not indicate how the jury allocated punitive damages between the two allegedly tortious acts, the Third Circuit remanded for a new trial on punitive damages. *Id*.

Finally, we reject Walmart's argument that the Happels did not appeal the set-off order and cannot use their challenge to the verdict form to do so. We do not believe the Happels' reference to the set-off in identifying the prejudice of an ambiguous verdict can be construed as a challenge to the set-off order. If the jury's allocation of damages on remand does warrant a recalculation of the set-off amount, the district court has broad discretion to vacate its previous order. *See* Fed. R. Civ. P. 60(b).

### III. CONCLUSION

For these reasons, we REVERSE the judgment of the district court and REMAND for a new trial on damages.