In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3323

CRAIG S. MEYERS,

*Plaintiff-Appellant,*

*v.*

NATIONAL RAILROAD PASSENGER
CORPORATION (Amtrak),

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08-cv-540—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED APRIL 22, 2010—DECIDED AUGUST 30, 2010

Before KANNE, WILLIAMS, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Craig Meyers, a pipe fitter and sheet metal worker, brought an occupational injury lawsuit against his employer, Amtrak, under the Federal Employers' Liability Act ("FELA"). The district court granted summary judgment in favor of Amtrak, citing several distinct grounds for its ruling. *Meyers v. Nat'l R.R. Passenger Corp.*, 648 F. Supp. 2d 1032 (N.D. Ill. 2009).

We address only the district court's grant of summary judgment on the ground that Meyers failed to provide any evidence to establish the required causation element of his FELA action. We find that because Meyers failed to comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure (FRCP), the reports and testimony of his proffered causation experts were properly barred by the district court. Consequently, Meyers failed to raise genuine issues of material fact with respect to the causation element of his FELA claim. His claim must therefore fail.

## I. BACKGROUND

Although our disposition of this appeal turns on procedural issues rather than background facts, we believe a summary of the circumstances that gave rise to the lawsuit is needed in order to provide context to our ruling today.

As a pipe fitter, Meyers was responsible for a variety of repair work on railroad cars, which at times required heavy lifting, carrying, reaching, pulling, twisting, and other repetitive motions. His work included the repair of vacuum pumps, toilet assemblies, drain valves, backflow preventers, and door motors. The equipment Meyers used for such projects included ratchets, wrenches, sockets, pliers, band saws, and sledge hammers. Some of Meyers's work necessitated that he perform repairs in confined areas such as equipment rooms, a pit area under the railroad cars, and railroad car bathrooms. Meyers claimed that these assignments were particularly

difficult for him, apparently in part because of his size—from the 1990s until he underwent gastric bypass surgery in 2005, Meyers weighed 350 pounds on average.

In early 2004, Meyers met with his primary care physician, Dr. Greg Daly, at which time he reported that he was experiencing numbness and tingling in his fingers. A magnetic resonance imaging test ("MRI") revealed that Meyers had spondylosis in the cervical spine, spinal stenosis, mild disc protrusion, and degenerative joint disease in the left shoulder. In addition, Dr. Daly referred Meyers to Dr. Gail Rosseau, a neurosurgeon, for treatment of suspected carpal tunnel syndrome.

Dr. Rosseau diagnosed Meyers with cervical spondylosis and possible carpal tunnel syndrome. Following an electromyogram ("EMG"), Dr. Rosseau determined that Meyers's suspected carpal tunnel syndrome might be due to alcohol abuse. In June 2004, Dr. Rosseau performed left carpal tunnel release surgery on Meyers.

That same year, Meyers answered a flyer from an attorney urging railroad workers to respond if they have experienced joint or neck pain. Meyers was subsequently referred by that attorney to Dr. Howard Freedburg. Dr. Freedburg diagnosed Meyers with carpal tunnel syndrome, bilateral shoulder rotator cuff tendinitis, low back pain, and degenerative joint disease in the knees.

In August 2006, Meyers met with Dr. Pietro Tonino, an orthopedic surgeon. Dr. Tonino performed right shoulder surgery on Meyers in September 2007. In December 2008, Dr. Rosseau performed back surgery on Meyers.

Meyers sued Amtrak on March 30, 2007, in the Court of Common Pleas of Philadelphia County, Pennsylvania, under the FELA, 45 U.S.C. § 51 *et seq.* Although the state court dismissed the suit for improper venue, Meyers was provided with six months to file a new action. Meyers refiled in the United States District Court for the Northern District of Illinois on January 25, 2008.

Meyers claimed that he had been exposed to excessive and harmful cumulative trauma since he began working at Amtrak in 1978. He complained that Amtrak's job requirements forced him to work in awkward positions and tight spaces, which in combination with inadequate equipment and repetitive motions, caused him to suffer injuries to his neck, shoulders, arms, and hands. Meyers alleged that his injuries were the result of Amtrak's failure to use ordinary care and caution toward him. Meyers claimed that despite his repeated complaints, Amtrak failed to meet standards for adequate work safety ergonomic programs and the company neglected to provide a reasonably safe place for him to work. In support of his claims, Meyers offered expert testimony in the form of reports prepared by Michael Shinnick, an ergonomist, and medical doctors Rosseau and Tonino.

At the close of discovery, Amtrak moved to strike the reports, affidavits, and opinions of Shinnick, Dr. Tonino, and Dr. Rosseau under Rule 702 of the Federal Rules of Evidence. Amtrak concurrently filed for summary judgment. Amtrak asserted three separate arguments in support of its motion for summary judgment. Amtrak first argued that Meyers was barred by the statute of

limitations from bringing his action against Amtrak. Second, Amtrak argued that Meyers could not establish that Amtrak was negligent in providing a safe place to work. Finally, Amtrak argued that there was no admissible evidence to support Meyers's claim that Amtrak's negligence caused his injuries.

First, the district court found that Meyers was barred by the statute of limitations with regard to his neck/spine injuries, but the court also determined that a genuine issue of material fact remained with respect to his hand injuries and his right shoulder injuries.

Next, the district court considered Amtrak's motions to strike because Meyers had relied on the expert testimony of Shinnick, Dr. Rosseau, and Dr. Tonino in opposing Amtrak's summary judgment arguments two and three. In an attempt to prove that Amtrak breached a duty of care to provide a safe place to work, Meyers relied on the opinion of Shinnick. Similarly, to prove causation between Amtrak's actions, or lack thereof, and Meyers's injuries, Meyers relied on the opinions of Dr. Rosseau and Dr. Tonino. In addressing whether these opinions should be admissible, the court relied upon and applied the correct legal standard under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The court also noted that in addition to the need for Meyers to meet the aforementioned standard for admissibility of expert testimony, Meyers was required to comply with the disclosure requirements for expert reports set forth in Rule 26(a)(2) of the FRCP.

The court first addressed the motion to bar Shinnick, the ergonomics expert offered by Meyers. The court found that Shinnick's opinions were not sufficiently reliable and would not assist the trier of fact because such opinions failed to provide the necessary link between the conclusions reached and a recognized underlying scientific method. The court therefore granted Amtrak's motion to strike the report and affidavit of Shinnick, and barred Shinnick as an expert witness.

The court then addressed the motions to bar Dr. Rosseau and Dr. Tonino, both of whom had been offered as medical experts for the purpose of establishing causation between Meyers's job duties and the injuries to his hand, neck, and spine. Dr. Rosseau submitted a report and affidavit opining that Meyers's injuries were in whole or in part work-related. Dr. Rosseau's report was in the form of a letter of approximately one page in length and addressed to Meyers's attorney. Although the report cited differential diagnosis as an evaluation method adopted by our circuit,[1] the report appeared to lack any evidence that Dr. Rosseau actually employed this method or that she provided any other support for her conclusions.

---

[1] "Differential diagnosis is the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 825 n.7 (7th Cir. 2010) (internal quotation marks omitted).

With respect to Dr. Tonino, the court observed that his letter to Meyers's attorney contained even less detail than Dr. Rosseau's letter. The court also noted that Dr. Tonino's report suffered from the same defect as Dr. Rosseau's—it failed to provide any support for his conclusions. In fact, Dr. Tonino made no mention of any underlying methodology. Accordingly, the court found that because no information was provided that would enable the court to conclude that Dr. Rosseau's and Dr. Tonino's opinions were reliable, the court struck their opinions.

Amtrak also argued, and the court alternatively found, that the opinions of Dr. Rosseau and Dr. Tonino should be stricken because Meyers failed to meet the standards for disclosure under Rule 26(a)(2). The court noted that Rule 26(a)(2) requires expert reports to include "the basis and reasons" for an expert's conclusions, and that neither doctor provided such support. As a result, the court found an additional, separate basis for striking the reports, affidavits, and opinions of Dr. Rosseau and Dr. Tonino.

The court then addressed Amtrak's motion for summary judgment. The court reasoned that because Meyers relied heavily on his proffered experts to establish evidence of Amtrak's duty, alleged breach of that duty, and causation, Meyers was unable to raise a genuine issue of material fact once such testimony was stricken. Consequently, on August 18, 2009, the court awarded summary judgment in its entirety to Amtrak.

Meyers now appeals the decision of the district court.

## II. ANALYSIS

Meyers presents three arguments on appeal. First, he argues that the district court erred in finding no genuine issues of material fact existed as to whether his neck/spine injuries were barred by the statute of limitations. Second, he argues that the district court erred in finding that the report, affidavit, and opinions of Shinnick were inadmissible and in barring his testimony. Third, he argues that the district court erred in finding that the reports, affidavits, and reports of Dr. Rosseau and Dr. Tonino were inadmissible and in barring their testimony.

We review *de novo* a district court's grant of summary judgment. *Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (7th Cir. 2010). However, where the plaintiff attacks the underlying evidentiary rulings, such as the exclusion of expert testimony, we review under an abuse of discretion standard. *See Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824-25 (7th Cir. 2010); *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755 (7th Cir. 2004). This continues to be true even when, as in this case, the admissibility question is "outcome determinative." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997).

Although the district court provided several distinct grounds for its grant of summary judgment in Amtrak's favor, we may affirm on any basis supported by the record. *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009); *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008). Amtrak argues on appeal that because

the district court found that Meyers failed to comply with Rule 26(a)(2)'s requirements, we may affirm on that basis alone. We agree.

In order to prevail in a FELA action, a plaintiff must show that the railroad was negligent and that such negligence contributed in whole or in part to the alleged injury. 45 U.S.C. § 51. Therefore, if Meyers is unable to raise a genuine issue of material fact as to the required causation element, his claim must fail. *See id.*[2]

In an effort to establish causation, Meyers submitted the reports of Dr. Rosseau and Dr. Tonino. The district court held that both reports failed to meet the standards for disclosure mandated in Rule 26(a)(2). The district court noted that the reports were merely "conclusory," and they did not provide sufficient information as to

---

[2] Relying on *Fulk v. Ill. Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994) and *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009), the district court recognized that while "the language in FELA is broad, plaintiffs are still required to prove each of the common law elements of negligence." *Meyers*, 648 F. Supp. 2d at 1037. Although accurate at the time of the district court's decision, we have subsequently determined that common-law proximate causation is not required to establish liability under the FELA. *McBride v. CSX Transp., Inc.*, 598 F.3d 388, 406 (7th Cir. 2010). While noteworthy, we need not delve further into the recent clarification of the causation standard under the FELA. Because Meyers did not comply with Rule 26(a)(2), he had no evidence whatsoever to establish causation, under any standard. And, as we will discuss later, this is dispositive of his claim.

how and why such conclusions were reached. The district court also determined that despite Dr. Rosseau's and Dr. Tonino's status as Meyers's treating physicians, they were retained in this instance for the specific purpose of providing expert testimony at trial. Accordingly, the court concluded that they were not excepted from the requirements in Rule 26(a)(2).

When a party intends to introduce an expert witness, the party must comply with the disclosure requirements in Rule 26(a)(2) if the expert witness "is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The disclosure must also include "a written report—prepared and signed by the witness." *Id*. In pertinent part, Rule 26(a)(2)(B) provides: "The [written] report must contain: (i) a complete statement of all opinions the witness will express and the *basis and reasons* for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them . . . ." *Id*. (emphasis added). The purpose of the report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response. *Walsh v. Chez*, 583 F.3d 990, 993 (7th Cir. 2009); *Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007). The consequence of non-compliance with Rule 26(a)(2)(B) is "exclusion of an expert's testimony . . . 'unless the failure was substantially justified or is harmless.'" *Gicla v. United States*, 572 F.3d 407, 410 (7th Cir. 2009) (*quoting* Fed. R. Civ. P. 37(c)(1)).

Meyers's sole argument is that because Dr. Rosseau and Dr. Tonino were his treating physicians and surgeons, they fell outside the scope of Rule 26(a)(2). Meyers relies on a Sixth Circuit case, *Fielden v. CSX Transportation, Inc.*, 482 F.3d 866 (6th Cir. 2007), which is neither binding on this court nor directly on-point. *Fielden* generally held that if the treating doctor forms an opinion about causation at the time of treatment, rather than at the request of counsel in anticipation of litigation, expert reports need not satisfy Rule 26(a)(2). *Id.* at 869.

Here, the district court noted a previous statement by this court that "even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony." *Musser*, 356 F.3d at 758. *Musser* recognized that "some district courts have suggested that if the Rule 26(a)(2)(A) testimony exceeds the scope of treatment and ventures into more general expert opinion testimony, a report may be necessary." 356 F.3d at 758 n.3. For example, in a more recent case, *Krischel v. Hennessy*, 533 F. Supp. 2d 790, 795 (N.D. Ill. 2008), the district court determined that a treating physician who testifies as to causation is often "going beyond" what was observed during treatment and therefore "the professional shall follow Rule 26(a)(2)(B) and serve an expert report complying with that Rule."

But we have not until now had the occasion to determine whether a treating physician who provides an expert opinion as to causation is required to file a formal report under Rule 26(a)(2)(B) when the subject of such opinion was not determined at the time of treatment. We

resolve this outstanding issue today by concluding that a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one "retained or specially employed to provide expert testimony in the case," and thus is required to submit an expert report in accordance with Rule 26(a)(2).[3]

Dr. Rosseau and Dr. Tonino prepared letters with opinions as to the causation of Meyers's injuries at the request of Meyers's attorney, specifically for the purpose of litigation. Meyers presents no evidence, and we find none in the record, suggesting that either doctor previously considered or determined the cause of Meyers's injuries during the course of treatment. As a result, we conclude that the district court was correct in finding that Meyers was required to provide a proper expert report under Rule 26(a)(2).

Because the causation experts Meyers used were required to submit formal reports under Rule 26(a)(2)(B), the

---

[3] We recognize that some devices might be used to avoid this requirement, as when a lawyer refers a client to a particular physician for both treatment and a causation opinion that the lawyer expects will be useful in litigation. In such cases, the physician might arguably be "retained or specially employed" to provide expert testimony, but regardless of how that issue is decided, in such cases a district court would retain power under Rule 26(a)(2)(B) to order such physicians to prepare a report when needed to provide fair disclosure to the opposing party.

reports were required to include the "basis and reasons" for their conclusions. As previously discussed, both doctors' reports were remarkably sparse, making it impossible to tell what the doctors might have been thinking about Meyers's injuries prior to authoring the letters. The district court therefore did not abuse its discretion in excluding the experts' testimony. *See Happel*, 602 F.3d at 825-26 (affirming the district court's exclusion of a doctor's testimony because the doctor's report was insufficient under Rule 26(a)(2) for failure to provide any underlying methodology in an effort to demonstrate causation); *see also Romero v. Drummond Co.*, 552 F.3d 1303, 1323-24 (11th Cir. 2008) (rejecting one-paragraph reports that did not provide an adequate basis for rebuttal or cross-examination).

## III. CONCLUSION

In the absence of any evidence establishing the causation element of Meyers's FELA claim, the district court's grant of summary judgment in favor of Amtrak is AFFIRMED.