In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 18-1007 & 18-1074

KARUM HOLDINGS LLC, *et al.*, and
KARUM LATIN AMERICA S. DE R.L.
DE C.V.,

*Plaintiffs-Appellants*,

*v.*

LOWE'S COMPANIES, INCORPORATED,
*et al.*,

*Defendants-Appellees.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 380 — **John Z. Lee**, *Judge.*

ARGUED MAY 29, 2018 — DECIDED JULY 13, 2018

Before BAUER, BARRETT, and ST. EVE, *Circuit Judges*.

BAUER, *Circuit Judge.* When Lowe's Companies, Inc. (Lowe's
Inc.) expanded its retail home improvement stores into Mexico,
Lowe's Companies Mexico, S. de R.L. de C.V. (Lowe's Mexico)

contracted with Karum Holdings LLC and a few of its subsidiaries, Karum Group LLC, and Karum Card Services S.A. de C.V., SOFOM, E.N.R. (collectively, Karum), to provide private-label credit card services there. The program failed to meet expectations, and Karum brought this lawsuit against both Lowe's Inc. and Lowe's Mexico (collectively, Lowe's) claiming breach of contract.

The focus of this appeal is Karum's proof of damages and expert disclosures, or lack thereof. Early on, Karum disclosed its summary "damages model," a 37-page estimate of damages with hundreds of figures contained in charts and graphs. Karum intended to have its Chairman and former CEO Peter Johnson and/or its current CEO and CFO Russell Ouchida present the damages model at trial as lay opinion testimony; Karum never retained a damages expert. Two months before trial, Lowe's filed a motion *in limine* to preclude Johnson and Ouchida from testifying as to the damages model because any testimony regarding the model required the specialized knowledge of an expert. The district court granted the motion, finding that Karum had never properly disclosed an expert pursuant to Federal Rule of Civil Procedure 26(a)(2). Since this was a case-dispositive sanction, the court granted judgment in favor of Lowe's and Karum appealed. We affirm.

## I.  BACKGROUND

### A.  The Agreements Between Lowe's and Karum

Lowe's Inc. is the second largest home improvement store in the United States, and in 2010, it expanded its North American presence into Mexico by opening two stores. Prior to opening those stores, Lowe's Mexico entered into the "Private

Label Credit Card Program Agreement" ("Program Agreement") with Karum. The term of the agreement was seven years, and it could only be terminated if certain conditions were met, or by mutual consent. The parties initially agreed to jointly fund the credit portfolio 50/50, but changed course in 2014 resulting in the "Profit Sharing and Funding Agreement" (the "Funding Agreement"), whereby Lowe's Mexico agreed to fund 99%. Karum Card Services was an entity created as a joint venture by Lowe's Mexico and Karum Group to manage and operate the program, *i.e.*, issue credit cards to customers in Mexico. In turn, Karum Card Services also had a separate "Masters Credit Services Agreement" (the "Services Agreement") with Karum Latin America S. de L.A. de C.V. (Karum LA), a subsidiary of Karum Group, to further carry out the program in Mexico.

The arrangement failed to meet Lowe's expectations, and Lowe's sought to terminate its relationship with Karum in 2014. After mediation proved unsuccessful, Karum and Karum LA filed this lawsuit on January 14, 2015. Karum alleged that a contractual relationship between Lowe's and Karum was reflected in all three agreements described above, and that Lowe's had unilaterally terminated the agreements. Lowe's filed a motion to dismiss all claims relating to the Services Agreement since Lowe's was not a party to that particular agreement, and dismiss Karum LA, because it was not a party to any agreement to which Lowe's was a party. The district court granted Lowe's motion without prejudice, and Karum's amended complaint removed Karum LA as a party and any claims for breach of contract of the Services Agreement.

**B. Karum's Witness Disclosures, Damages Model, and Procedural History**

Karum made its initial Rule 26(a) disclosures on March 13, 2015. Karum provided Lowe's, pursuant to Rule 26(a)(1)(A), with a list of names likely to have "discoverable information relevant to disputed facts," which included both Johnson and Ouchida. Karum's disclosures did not designate any potential witnesses as experts under Rule 26(a)(2).

In April 2015, Karum produced a 37-page summary "damages model," as required by Rule 26(a)(1)(A)(iii). The model had two components: (1) the "Portfolio Component," which, according to Karum, projected its share of the estimated value of the portfolio in the absence of Lowe's breach; and (2) the "Services Component," which projected service fees that non-party Karum entities, such as Karum LA, would have received from Karum Card Services pursuant to the Services Agreement. Karum designated both Johnson and Ouchida as its Rule 30(b)(6) witnesses on damages, and Lowe's deposed both in April 2016. Notably, the damages model never referred to Johnson or Ouchida, nor summarized what they would say regarding its content.[1] Lowe's filed a motion for partial summary judgment with respect to the Services Component, and the district court granted Lowe's motion on March 28, 2017, thus striking that component from the damages model.

---

[1] The model was not solely built by Johnson or Ouchida. According to their depositions, the model was built with the assistance of two "very talented financial analysts" who had "very significant expertise," and Johnson and Ouchida served in a more supervisory role.

Following the grant of partial summary judgment in favor of Lowe's, the district court held a status hearing on April 12, 2017, in order to set expert disclosure deadlines and a trial date. During the hearing, Karum sought to supplement a revised damages model in order to conform to the court's summary judgment ruling, which the court granted. The court then asked Karum's counsel whether it intended to offer "an affirmative expert on damages" to which Karum's counsel replied "No, Your Honor. The plaintiff will testify to it himself. He is the expert on it." Relying on this statement, the court set a deadline for Lowe's expert disclosures under Rule 26(a)(2), but made no similar deadline for Karum. The court set a trial date for November, but later changed that date to December 11, 2017.

Karum's supplemental damages model substantially altered the Portfolio Component and added a new component that had not been previously disclosed or subject to discovery. Lowe's swiftly moved to strike the supplemental model as untimely under Rule 26 and prejudicial. In its memorandum in opposition to Lowe's motion to strike, Karum discussed how it intended to present the damages model at trial. Karum told the court that it had "advised Lowe's that it did not intend to use a retained expert to present damages, but rather would rely on opinion testimony through … Johnson." In a footnote to that sentence, Karum elaborated further on Johnson's testimony:

> Johnson can opine as a lay witness under Federal Rule of Evidence 701 on the subject of Karum's estimated damages by virtue of his perception of Karum's business gained through

> his management of that business. But he *might also qualify as an expert* under Federal Rule of Evidence 702, through the knowledge and experience he has gathered from decades in the credit business. In fact, Johnson has served on the audit committees of multiple public companies, and as such, is recognized by the SEC to have financial expertise. Either way, Lowe's knows Johnson and will not be surprised by his testimony.

(emphasis added).

The court granted Lowe's motion to strike the supplemental damages model on September 6, 2017, and Karum's damages model for trial was reduced to the original Portfolio Component from April 2015. During a status hearing the following day, the parties updated the court on their expert disclosures. Lowe's counsel stated that its retained expert would produce a report by the end of the month. In the court's minute entry, the court reconfirmed that Karum's counsel "[did] not anticipate offering an expert at trial but may offer a rebuttal expert after [reviewing Lowe's] experts report."

### C. Lowe's Motion *In Limine* To Exclude Johnson's Expert Testimony

On October 4, 2017, with the trial date approaching, Lowe's filed "Motion *In Limine* No. 1 to Exclude Evidence of Plaintiffs' Damages Model." In that motion, Lowe's advanced a number of arguments, only one of which is relevant to this appeal: that no Karum witness, including Johnson and/or Ouchida, could properly testify as to the damages model because it would

constitute impermissible lay opinion testimony. Lowe's noted that the damages model projected "how the credit portfolio allegedly *would have grown* through the end of the parties' agreements in February 2017 and calculates Karum's theoretical share." As such, Johnson and Ouchida could not offer lay opinion testimony under FRE 701 because the model was "predicated on dozens of assumptions and projections, including the number of estimated credit card applications, approvals, credit card purchases, the timing and amount of payments, finance charges, and many other variables."

Karum conceded that no witness could provide lay opinion testimony as to the damages model, but rather asserted that it had "unambiguously" disclosed Johnson as an expert witness pursuant to Rule 26(a)(2)(C).[2] Karum contended that by disclosing Johnson's identity in its initial disclosures and providing the damages model, it had complied with the expert disclosure requirements. It further noted that it "reminded" Lowe's of its expert disclosure in the footnote quoted above from the supplemental damages model briefing.

On November 21, 2017, the district court granted Lowe's motion *in limine* to exclude Johnson from offering expert testimony on the damages model. The court found that "Karum's purported disclosure of Johnson as an expert witness was plainly inadequate" and consequently, the failure to disclose Johnson as an expert was a Rule 26(a) violation. Furthermore, the court concluded that Karum's violation was

---

[2]   Karum did not provide such a vociferous defense as it related to Ouchida. Instead, Karum only stated that since 2015, it had informed Lowe's that "perhaps" Ouchida would testify as to the damages model.

neither substantially justified nor harmless, particularly in light of the upcoming trial date. Thus, exclusion of Johnson's expert testimony was automatic under Rule 37(c)(1).

Karum filed a motion to reconsider the court's ruling, arguing that the exclusion of Johnson's expert testimony amounted to a case-dispositive sanction by eliminating its ability to present evidence of damages. Karum also requested a variety of alternatives to the court's ruling, from bifurcating the trial to filing an interlocutory appeal. On November 28, 2017, the court held a lengthy hearing and affirmed its previous ruling. The court questioned the parties on other ways to introduce evidence of damages without Johnson relying on the damages model, and explored the alternative remedies proposed by Karum. However, the court found "that there is no lesser remedy available at this point," and "that no other alternatives … would be available to Karum that would not otherwise inflict undue prejudice to Lowe's." According to the court, the exclusion of Johnson's expert testimony was "proportionate not only to Karum's failure to abide by Rule 26(a)(2), but also to the substantial prejudice to Lowe's if the Court would allow his testimony to proceed."

The court allowed Karum to go back through the discovery to identify any other evidence of damages it might be able to introduce. The following day, Karum wrote a letter explaining its alternative method of proving damages. Lowe's filed a motion *in limine* to exclude that method, and the court held another lengthy hearing on December 4, 2017. Applying the same Rule 26(a) and Rule 37(c)(1) analysis, the court again concluded that Karum's latest submission was neither substantially justified nor harmless.

Karum conceded that in light of the court's ruling, it could not prove damages. Thus, the court entered judgment in favor of Lowe's.

### D. Lowe's "Setoff" and Permissive Counterclaim

In its answer to the complaint, Lowe's set forth an affirmative defense stating that it was entitled to a setoff against any relief sought by Karum in light of the monies owed to Lowe's. It explained the affirmative defense as follows:

> Lowe's provided the funding to [Karum Card Services] to provide the various credit services under the Program Agreement and Funding Agreement. Lowe's provided that funding in the form of debt, including promissory notes executed by [Karum Card Services] and Karum Group. There remains an outstanding balance owed to Lowe's (the exact amount to be proven at trial), and these payments and loans made to Karum should be set off from any damages that Karum might obtain.

Lowe's made three separate loans in 2014 and 2015 secured by promissory notes to Karum Card Services which were scheduled to mature in 2019 and 2020 absent a default. Karum Card Services continued to operate throughout the litigation, providing monthly statements to Lowe's. However, in early 2017, Karum informed Lowe's that it intended to shut down Karum Card Services. Concerned about the status of its loans, Lowe's sent a letter on August 30, 2017, notifying Karum that it had defaulted on the notes, pursuant to a section in the note that allows Lowe's to declare a default where it believes the

prospect of payment or performance is impaired. Lowe's sought payment of approximately $6.28 million which Karum refused to pay.

On September 28, 2017, Karum filed a motion *in limine* to exclude Lowe's setoff affirmative defense and any evidence it intended to offer to support it. Before the district court ruled on that motion, Lowe's filed a motion to convert its setoff affirmative defense into a counterclaim under Rule 8(c)(2), or in the alternative, for leave, pursuant to Rule 13(e), to assert a new counterclaim with respect to the notes. The district court granted Karum's motion *in limine* and denied Lowe's motion to convert the setoff defense into a counterclaim. The court concluded that Lowe's counterclaim was permissive rather than compulsory because the purported default cited in the August 2017 letter took place well after the events that gave rise to Karum's claims.

## II. DISCUSSION

Karum's main contention on appeal is that the district court erred in excluding Johnson's expert testimony on the damages model. Karum also argues that the court made a variety of errors prior to its ruling on Johnson's testimony.

### A. Karum's Rule 26(a) Violation and Exclusion Under Rule 37(c)(1)

Karum contends that it complied with Rule 26(a)(2) and timely disclosed Johnson as an expert; as it did below, it concedes that no witness could offer lay opinion testimony as to the damages model. Even if it failed to properly disclose Johnson as an expert, Karum argues that Lowe's suffered no

prejudice, and that the court could have imposed a less drastic sanction.

A district court's discovery rulings, including a decision to exclude expert testimony, are reviewed for an abuse of discretion. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755 (7th Cir. 2004). "A court does not abuse its discretion unless … (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000) (internal quotation marks and citation omitted).

Rule 26(a)(2)(A) requires a party to disclose the identity of a witness who will present expert testimony under Federal Rule of Evidence 702. FED. R. CIV. P. 26(a)(2)(A). Since Johnson was a non-retained expert, Karum was required to disclose (1) the subject matter of his expert testimony and (2) "a summary of the facts and opinions" on which Johnson would have testified. FED. R. CIV. P. 26(a)(2)(C). Karum had to disclose Johnson's expert testimony pursuant to a court ordered deadline, and if no deadline was set, at least 90 days prior to the start of trial. FED. R. CIV. P. 26(a)(2)(D)(I). Finally, "all disclosures under Rule 26(a) must be in writing, signed, and served." FED. R. CIV. P. 26(a)(4).

Rule 37(c)(1) sets forth the sanction for failing to comply with Rule 26(a)'s expert disclosure requirements:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

> witness to supply evidence on a motion, at a
> hearing, or at a trial, unless the failure was
> substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1). Accordingly, "[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser*, 356 F.3d at 758.

We first assess the court's application of Rule 26 to ensure it did not reach an erroneous conclusion of law in finding that Karum failed to disclose Johnson as an expert. *Id.* at 755. If the district court incorrectly found a Rule 26(a) violation, "excluding the evidence would necessarily be an abuse of discretion." *Id.* Then, without substituting our own judgment, we examine for an abuse of discretion the court's basis for finding that Karum's Rule 26(a) violation lacked substantial justification and was not harmless. *Id.*

We agree with the district court that Karum's purported expert disclosure of Johnson was plainly inadequate; in fact, it was non-existent. The plain meaning of Rule 26(a)(2) demands a formal designation for expert disclosures. *See id.* at 757. Karum disclosed Johnson as a "fact" witness under Rule 26(a)(1)(A) in its March 2015 disclosures; nothing in the March 2015 disclosure stated or suggested Johnson was an expert witness. There is a significant distinction between disclosing an individual as a fact witness under Rule 26(a)(1)(A) and disclosing an expert witness under Rule 26(a)(2). *Id.* "That duty to disclose a witness *as an expert* is *not* excused when a witness who will testify as a fact witness

*and* as an expert witness is disclosed as a fact witness." *Tribble v. Evangelides*, 670 F.3d 753, 759 (7th Cir. 2012).

At two separate status hearings after the close of discovery, Karum affirmed that it did not intend to offer an affirmative expert at trial. Karum told Lowe's and the district court that Johnson would testify on the damages model, and in a footnote contained in a brief, stated that Johnson could "opine as a lay witness" under FRE 701. Its equivocal statement that Johnson "might also qualify as an expert" was woefully insufficient to constitute a formal expert disclosure.

Moreover, the damages model alone was insufficient to constitute "a summary of the facts and opinions" on which Johnson would testify to regarding the model. The damages model never referred to Johnson, nor did it contain a summary of what he might have said at trial regarding its hundreds of figures and assumptions.

Karum stresses that Lowe's was aware that Johnson would provide expert testimony. Lowe's had deposed Johnson about the model and knew Karum intended to call him to testify about its content. However, Lowe's should not have to assume a particular witness will testify as an expert. *See Musser*, 356 F.3d at 757. As we have reiterated before, "[f]ormal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial." *Id.* Simply put, the district court correctly found Karum violated Rule 26(a).

Karum does not try to justify its Rule 26(a) violation since it incorrectly believes it complied with Rule 26(a). Instead, Karum argues that even if it did violate Rule 26(a), Lowe's was

not prejudiced and any error was harmless. The district court rejected that argument, and on appeal, Karum raises the same arguments it put forward below: that Lowe's knew Johnson's identity, opinions, and qualifications from the two-day deposition of Johnson; and that Lowe's had already hired a rebuttal expert to attack the damages model.

The district court did not abuse its discretion in finding that Karum's Rule 26(a) violation was not harmless, and accordingly, Johnson's expert testimony was subject to automatic exclusion under Rule 37(c)(1). In its analysis, the court stated that it considered certain factors we enumerated in *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003), that weighed in favor of a finding of prejudice. The court noted that although Lowe's was familiar with Johnson, it had no reason to take discovery on his qualifications and expertise, nor could it then challenge his qualifications or the admissibility of his expert testimony under the grounds set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Additionally, Lowe's rebuttal expert would have prepared a different report had he been provided Johnson's expert qualifications and a summary of his opinions. Finally, as the court correctly noted, we have previously rejected arguments that a Rule 26(a) violation is harmless simply because the opposing party knew the witness would testify in some capacity. *See Tribble*, 670 F.3d at 760.

Karum maintains that the court could have reopened discovery and allowed Lowe's one day to re-depose Johnson about his qualifications while maintaining the December 11 trial date. But again, the district court expressly rejected that idea. The court found that excusing Karum's Rule 26(a)

violation would necessarily delay the trial date because Lowe's would likely seek not only to re-depose Johnson, but also to obtain additional discovery regarding his qualifications and opinions. Moreover, the court predicted that would lead to *Daubert* briefing and that Lowe's would likely seek leave to amend its rebuttal expert report. Again, we have previously found these precise circumstances to be prejudicial. *See Musser*, 356 F.3d at 754–59. And while the court could have delayed the trial date, it is certainly not an abuse of discretion to find that Lowe's would have been prejudiced by the additional cost of excusing Karum's Rule 26(a) violation weeks before trial and continuing the litigation.

Finally, Karum asserts that the court erred by imposing what amounted to be a case-dispositive sanction instead of a less drastic measure. We have stated before that when a district court's discovery sanction "necessarily entails dismissal of the case, the sanction 'must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction.'" *Sherrod*, 223 F.3d at 612 (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998)). Indeed, we have "urge[d] district courts to carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative." *Musser*, 356 F.3d at 760.

We are satisfied that the district court's sanction was reasonable and made with careful consideration of the circumstances. After issuing its decision, the court held a lengthy hearing on a motion to reconsider its ruling, and heard arguments from both parties over a variety of alternative remedies. At that hearing, the court invoked the correct legal

standards and concluded that there was "no lesser remedy available" with the trial date weeks away, and that the exclusion of Johnson's testimony was proportionate to the Rule 26(a) violation. Instead of ending the matter there, the court gave Karum an opportunity to go back through discovery to see whether it could present damages evidence without Johnson's expert testimony, and then held another lengthy hearing. The court's actions assure us that it carefully considered Rule 37(c) and did not abuse its discretion in imposing a case-determinative sanction.

## B. Karum's Other Arguments

Karum argues that, prior to excluding Johnson's expert testimony, the court erred in (1) striking both the Services Component of the damages model and the supplemental model it provided in April 2017; (2) dismissing Karum LA and claims related to the Services Agreement; and (3) finding Lowe's counterclaim permissive.

Karum's first argument cannot overcome our decision above to affirm the district court's exclusion of Johnson's expert testimony under Rule 37(c)(1). Johnson was Karum's Rule 30(b)(6) damages witness, and any testimony from Johnson as to the Services Component of the damages model or the supplemental model certainly would have ran into the same challenge from Lowe's, *i.e.*, that Johnson's testimony would constitute improper lay opinion testimony. Both the Services Component and the supplemental model relied on the same assumptions and projections for the hundreds of figures

that were used in the Portfolio Component.[3] Thus, even if we were to find that the court erred by striking either the Services Component or the supplemental model, Karum's Rule 26(a) violation and the exclusion of Johnson's expert testimony on the damages model rendered any error irrelevant.

Next, Karum attacks the district court's early ruling to dismiss, without prejudice, all claims related to the Services Agreement and Karum LA as a party to the lawsuit. "We review *de novo* a district court's ruling that a complaint fails to state a claim upon which relief may be granted under Rule 12(b)(6)." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 332 (7th Cir. 2018).

Karum argues that even though Lowe's was not a party to the Services Agreement, it was a necessary part of the parties' relationship. In other words, Karum Card Services had to execute the Services Agreement with Karum LA in order to carry out the Program Agreement with Lowe's. Yet, the district court correctly dismissed this argument because nothing in the three agreements suggests that together they form a "master agreement" where breaching one would constitute a breach of the other. In fact, the court pointed to the integration clauses in

---

[3]   Karum conceded below and on appeal that the Portfolio Component to the damages model required expert testimony. However, in a footnote to its reply brief on appeal, Karum suggests that Johnson's testimony as to both the Services Component and the supplemental model would be fact testimony under FRE 701, not expert testimony. This position simply cannot be reconciled with the fact that the Services Component and supplemental model rely on the same assumptions and projections as the Portfolio Component.

both the Program and Funding Agreements, which state they "constitute the entire agreement."

As it relates to Karum LA, Karum advances a different argument than it raised below: that Karum LA is a third-party beneficiary under New York law.[4] Leaving aside the fact that this argument was waived, Karum did not plead in the complaint that Karum LA is a third-party beneficiary, nor could it have since the Program Agreement specifically contained a clause titled "No Third Party Beneficiaries."

Finally, Karum asserts that the court erred in finding that Lowe's counterclaim was permissive rather than compulsory. Rule 13(a) governs compulsory counterclaims, and states that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim … arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(a)(1)(A). Karum contends that the promissory notes on which Lowe's sought payment arise out of the same transaction that forms the basis of Karum's claims because the money was loaned as part of the Funding Agreement.

However, as Rule 13(a) makes clear, the counterclaim is only compulsory if it existed at the time Lowe's served its answer on Karum in 2015. As the district court correctly found, the counterclaim did not exist until sometime in 2017 when Lowe's discovered that Karum Card Services would shut down without any repayment on the loans. This action led

---

[4]   Each of the three "agreements" contains a choice of law provision adopting New York law.

Lowe's to declare a default on the notes in August 2017. Since the counterclaim did not exist at the time Lowe's served its answer, the district court correctly found that Lowe's counterclaim is permissive.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment in favor of Lowe's.